In the INTEREST OF GREGORY R.S., Katherine L.S., Margaret C.S., James B.S. and Joseph D.S., persons under the age of 17:

STATE of Wisconsin, Petitioner-Respondent,

v.

GREGORY L.S., Respondent-Appellant,†

MICHELLE S., Respondent.

Court of Appeals

*No. 01–2325. Submitted on briefs February 5, 2002.—Decided March 5, 2002.*

2002 WI App 101

(Also reported in 643 N.W.2d 890.)

†Petition to review dismissed 7-26-02.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Leonard W. Schulz* of Big Bend.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Mary M. Kerrigan-Mares*, assistant district attorney of Green Bay.

Before Cane, C.J., Hoover, P.J, and Peterson, J.

¶ 1. CANE, C.J. Gregory L.S. appeals from circuit court orders adjudging his children to be in need of protection or services (CHIPS) under WIS. STAT. § 48.13(10) (relating to parental neglect) and the accompanying dispositional orders.[1] Gregory also appeals the court's denial of his motion to dismiss the petitions on grounds that the children are no longer in need of protection or services because they are now living with him, rather than with his ex-wife.

---

[1] All statutory references are to the 1999–2000 version unless otherwise noted. Originally assigned as a one-judge appeal, this case was reassigned to a three-judge panel on September 18, 2001. *See* WIS. STAT. RULE 809.41.

¶ 2. Gregory presents two issues on appeal: (1) whether children can be adjudicated in need of protection or services when the divorced parents have joint custody, the mother committed acts proscribed by WIS. STAT. § 48.13(10), and the father can provide the necessary care for his children; and (2) even if a CHIPS adjudication is permissible in this situation, whether the adjudication can be made without providing the non-neglectful parent a jury trial or an evidentiary hearing.[2]

¶ 3. We conclude that as a matter of law, a court is not precluded from finding a child in need of protection or services even when only one parent has neglected the child. Where there is clear and convincing evidence to support a CHIPS petition, a court can properly enter a CHIPS order. Although one parent may be fit, there are times when the facts support a CHIPS order that can protect the best interests of the child.

---

[2] Gregory's appeal centers on the CHIPS adjudications, rather than on the dispositional orders. Gregory does not contest the court's legal authority, once the children were adjudicated, to fashion dispositional orders that require Gregory to take certain action (*e.g.,* cooperate with social services). He also does not appeal any of the specific requirements imposed on him in the dispositional orders. Gregory does suggest that he was denied due process when the circuit court refused to let him call several witnesses at the dispositional hearing, but he does not seek a new dispositional hearing. To the extent Gregory is attempting to appeal the dispositional orders based on the hearing procedure, we conclude his argument is inadequately briefed. *See State v. Pettit,* 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (appellate court may decline to review issues inadequately briefed). Our decision will focus on the circuit court's decision to adjudicate the children in need of protection or services.

¶ 4. Further, we conclude that when a court considers the child's need for protection or services that the court can order, as required by Wis. Stat. § 48.31(2), the determination should be made based on the facts in existence on the date the petition was filed. In doing so, we reject Gregory's argument that the court should consider conditions as they exist on the date of the fact-finding hearing, as this would allow the court's jurisdiction over the child to change daily, depending on the circumstances in the home on a particular day. Instead, we conclude that the court should consider changes subsequent to the petition's filing at the dispositional hearing.

¶ 5. In this case, it is undisputed that as of the date the petitions were filed, the children were in need of out-of-home placement and their mother required counseling and mental health and substance abuse assessments. Accordingly, summary judgment adjudicating the children in need of protection or services was appropriate. We affirm the orders.

### Statement of Facts

¶ 6. Gregory and Michelle S., parents of the five children in this case, divorced in 1999. The parties were awarded joint legal custody and Michelle received primary physical placement. On March 6, 2001, the Brown County Department of Human Services responded to a request from the Green Bay Police Department to investigate whether the children were being neglected. According to the CHIPS petitions, the social worker observed numerous conditions that endangered the children, such as

> food ground into the carpeting throughout the home, . . . cat litter and fecal matter in and surrounding the sink in the main level bathroom, full litter box, one

foot of clothing completely covering the laundry room floor causing a fire hazard . . . fresh cat vomit on the carpet of the stairs leading to basement, 4 Rubbermaid containers in the basement area containing fecal matter and urine—undetermined if it was human or animal. Also found were two steak knives and one screwdriver on the floor in the play area, moldy food found in the area in the play kitchen center, raw eggs thrown at the wall downstairs in the play room, . . . combustibles surrounding the water heater, upstairs landing area blocked with turned over furniture creating a fire hazard with no clear walkway, non functioning light in one of the children's bedroom [and] two clogged toilets with fecal matter and used tampons on the second level.

¶ 7. The children, ages two through eleven, were immediately removed from the home. Two were placed with their maternal grandparents and three were placed in a foster home.

¶ 8. On March 9, the State filed CHIPS petitions alleging that the children were in need of protection or services because Michelle "neglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health" of the children. *See* WIS. STAT. § 48.13(10). In addition to describing the condition of the home on March 6, the petitions indicated that Michelle's father and friends had voiced concerns about Michelle's mental health and substance abuse. The petitions alleged that the children were in need of protection or services that the court could order, such as out-of-home placement and counseling and assistance for Michelle regarding substance abuse, mental health issues and parenting skills.

¶ 9. The initial appearance took place on March 12 before a court commissioner. The appearance was continued to March 19 for the entry of Michelle's plea.

However, the commissioner on March 12 heard argument from the State that the children should be returned to Michelle, given that the home had now been cleaned. Gregory objected, asserting that the children should be placed with him. Gregory's counsel explained that on March 6, Gregory was in Florida visiting his father and returned to Wisconsin as soon as he learned that the children had been removed from the home. Gregory argued that although the home had been cleaned, there were alcohol or drug issues that should be addressed. He asked the court commissioner to place the children in his home.

¶ 10. The court commissioner concluded that the children could be returned to Michelle's care, but cautioned that the final placement of the children would be decided at a later date. The following day, Michelle was arrested for operating while intoxicated (OWI). The department placed the children with Gregory.

¶ 11. On March 19, both parents again appeared before the court commissioner for the continued initial appearance. Michelle denied the allegations in the petitions. In light of Michelle's recent arrest for OWI, the department recommended placing the children with Gregory. The commissioner agreed and also ordered that Michelle could have supervised visitation with the children.

¶ 12. On April 11, Gregory notified the court and the parties by letter that he denied the allegations in the petitions. He requested both a jury trial and a substitution of judge. These requests were granted.[3]

---

[3] The State argues that Gregory's request for a jury trial was untimely and that, therefore, he was not entitled to a jury trial. Because we conclude that a jury trial was unnecessary

¶ 13. On April 17, Gregory moved for summary judgment, asserting that there were no issues of material fact and that he was entitled to dismissal of the petitions as a matter of law. In support, Gregory noted that the children were now living with him and there were no allegations that he was unable to provide for their needs. He argued that the circuit court lacked jurisdiction over the children because there was nothing that the court could order that was not being provided.[4]

¶ 14. The State responded with a cross-motion for summary judgment, arguing that it need not prove both parents unfit before the children could be in need of protection or services. The State asserted that summary judgment in its favor was appropriate because both Michelle and the guardian ad litem planned to admit the allegations in the petitions. Further, the State contended that Gregory's subsequent care for the children did not call for a dismissal of the CHIPS petitions. The State explained:

> [T]he fact finder must consider the facts and circumstances as they existed on the date that the children were removed from the home, which is March 6, 2001. . . . Even if it were to be agreed that an appropriate home and care for the children is now available with the father, that does not alter the historical facts or address the issues for this adjudication. Where the children should ultimately be placed is an issue for

because the relevant facts were undisputed, we do not address the timeliness of Gregory's requests.

[4] Gregory also contended that he would have to be found unfit before the court could exercise jurisdiction over his children. On appeal, he takes a slightly different position, arguing that a court cannot find a child in need of protection or services unless there is a parental void that cannot be filled by the non-neglectful parent.

disposition and does not change what has already occurred.

Finally, the State argued that Gregory was not without flaws, referring to several alleged law violations mentioned in the petitions.[5]

¶ 15. Without holding a hearing, the circuit court on May 29 granted summary judgment in the State's favor and scheduled a dispositional hearing. In the order, the court recognized that no one had disputed the allegations in the petitions relating to March 6, 2001. On May 31, Gregory obtained a family court order transferring primary physical placement to him that would take effect upon dismissal of the CHIPS actions.

¶ 16. At a June 5 status hearing, Michelle appeared before the court to admit the allegations in the petitions. The court accepted her admissions, noting that "this Court has already made a determination that the children are, in fact, in need of protection and services." The guardian ad litem asked the court to enter admissions on behalf of the children. The court agreed.

¶ 17. The dispositional hearing was scheduled for June 25. After this court denied Gregory's motion for leave to appeal a nonfinal order, Gregory filed with the circuit court a motion to dismiss the petitions, arguing that he had not been given a fair opportunity to respond to the State's motion for summary judgment. Gregory indicated that if he had been given the opportunity, he would have objected to the State's failure to comply

---

[5] The petitions indicate that there was a domestic violence incident between Gregory and Michelle, and that Gregory allegedly violated a restraining order on multiple occasions. It appears from the record that the criminal charges against Gregory subsequently were dismissed in July 2001.

with the twenty-day notice requirement. *See* Wis. Stat. § 802.08(2).

¶ 18. Gregory also stated that before his children could be adjudicated in need of protection or services, the State was required to prove: (1) that Michelle neglected, refused or was unable for reasons other than poverty to provide necessary care; (2) that the failure to provide care seriously endangered the children's health; and (3) that there is something that the court could order that is not already being provided, i.e., that there is a need for protective services. Gregory maintained that this third element must be satisfied both at the time of the fact-finding hearing and the dispositional hearing. Gregory argued that the State could not establish the third element because there was no service or material necessity that the Court could order that was not already being provided by Gregory.

¶ 19. The circuit court considered Gregory's motion to dismiss at the dispositional hearing and ultimately denied the motion in a written order. The court proceeded with the dispositional hearing and concluded that the children should be under the court's supervision for one year. The court ordered that the children be placed with Gregory and that the department provide ongoing services. Michelle was granted visitation. The court also imposed conditions on both Gregory and Michelle, including that both parents undergo a psychological evaluation and work with a parenting instructor. This appeal followed.

### RELEVANT STATUTES

¶ 20. The CHIPS petitions were filed pursuant to Wis. Stat. § 48.13(10), which provides in relevant part:

**Jurisdiction over children alleged to be in need of protection or services.** The court has exclusive

original jurisdiction over a child alleged to be in need of protection or services which can be ordered by the court, and:

. . . .

**(10)** Whose parent, guardian or legal custodian neglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child.

¶ 21. Also at issue is WIS. STAT. § 48.31, which provides in relevant part:

**Fact-finding hearing. (1)** In this section, "fact-finding hearing" means a hearing to determine if the allegations in a petition under s. 48.13 or 48.133 or a petition to terminate parental rights are proved by clear and convincing evidence.

**(2)** The hearing shall be to the court unless the child, the child's parent, guardian or legal custodian . . . exercises the right to a jury trial by demanding a jury trial at any time before or during the plea hearing. . . . At the conclusion of the hearing, the court or jury shall make a determination of the facts, except that in a case alleging a child or an unborn child to be in need of protection or services under s. 48.13 or 48.133, the court shall make the determination under s. 48.13 (intro.) or 48.133 (intro.) relating to whether the child or unborn child is in need of protection or services which can be ordered by the court. If the court finds that the child or unborn child is not within the jurisdiction of the court or, in a case alleging a child or an unborn child to be in need of protection or services under s. 48.13 or 48.133, that the child or unborn child is not in need of protection or services which can be ordered by the court or if the court or jury finds that the facts alleged in the petition have not been proved, the court shall dismiss the petition with prejudice.

## DISCUSSION

¶ 22. At issue is the circuit court's summary judgment adjudicating the children in need of protection or services. Summary judgment can be used in CHIPS cases. *See N.Q. v. Milwaukee County Dep't of Soc. Servs.*, 162 Wis. 2d 607, 612, 470 N.W.2d 1 (Ct. App. 1991). When reviewing a motion for summary judgment, we apply the same methodology in the same manner as the trial court. *State v. Courtney E.*, 184 Wis. 2d 592, 599, 516 N.W.2d 422 (1994). First, we review the sufficiency of the CHIPS petition. *Id.* If the petition is sufficient, we determine whether any factual issues exist and whether the moving party is entitled to judgment as a matter of law. *See id.*

¶ 23. Gregory does not dispute the sufficiency of the CHIPS petitions. We agree that the petitions provide sufficient facts to support the allegations that (1) the children are "in need of protection or services which can be ordered by the court;" (2) the parent neglected, refused or was unable for reasons other than poverty to provide for the child; and (3) the parent's inaction seriously endangered the physical health of the child. *See* WIS. STAT. §§ 48.13 (intro.) and 48.31(2).

¶ 24. Because the petitions were sufficient, we determine whether any factual issues exist and whether the moving party is entitled to judgment as a matter of law. *See Courtney E.*, 184 Wis. 2d at 599. At the fact-finding hearing, the fact-finder determines whether the allegations in the petition with respect to neglect were proven. *See* WIS. STAT. § 48.31(1) and (2). Section 48.31(2) further provides that at the conclusion of the

fact-finding hearing, "the court shall make the determination under s. 48.13 (intro.) or 48.133 (intro.) relating to whether the child ... is in need of protection or services which can be ordered by the court." If the requisite facts are proven, then the court sets the date for the dispositional hearing. WIS. STAT. § 48.31(7). In the alternative, if all parties consent, the court may immediately proceed with a dispositional hearing. *Id.*

¶ 25. Accordingly, the State was entitled to judgment as a matter of law in this case only if the facts were undisputed with respect to three elements: (1) Michelle neglected the children; (2) the children's health was seriously endangered; and (3) the children are in need of protection or services that the court can order. *See* WIS. STAT. §§ 48.13 (intro.) and 48.13(10). No one disputes that the first two elements were satisfied. Resolution of this appeal therefore depends on the third element.

¶ 26. The crucial issue is whether the court's determination pursuant to WIS. STAT. § 48.31(2) should consider the children's needs as of the date of the fact-finding hearing, as Gregory asserts. The State argues that the court's determination should be made based on the facts and circumstances as they existed on the date the children were removed from the home.[6] In support, the State cites the reasoning reflected in WIS JI—CHILDREN 180, "Appropriate Date for Jury's Find-

---

[6] The State asserts that the appropriate date to consider is the date on which the children were removed from the home. Neither the State nor WIS JI—CHILDREN 180 explains when the date of removal should be used as opposed to the date the petition is filed. Here, the facts were substantially the same on March 6 and March 9. Accordingly, for purposes of this opinion, we will consider the facts as they existed on the date the

ing," and the accompanying comment.[7] The instruction provides:

> In answering the question in the special verdict, you must consider the facts and circumstances as they existed on ____, which was [the date on which the petition was filed] [the date on which the child was removed from the home by the Department of Social Services]. Your answer must reflect your finding as of that date.

¶ 27. The comment to the jury instruction acknowledges that the CHIPS statutes do not specify the time period that should govern each factual finding. Comment, WIS JI—CHILDREN 180. It also points out problems that could arise due to the lack of statutory guidance and suggests that policy reasons support looking at the facts as they existed on the date the petition was filed or the child was removed from the home. *Id.* The comment provides:

> The issue of the date or time period upon which the jury must focus is most likely to arise with respect to the many jurisdictional grounds which are worded in the present tense. For example, Wis. Stat. § 48.13(8) provides for CHIPS jurisdiction over a child "who is receiving inadequate care during the period of time a parent is incarcerated." Department intervention will

petitions were filed. We decline to address when the date of removal would be more appropriate.

The guardian ad litem did not file a brief on appeal.

[7] Although the decisions and comments of the Wisconsin Juvenile Jury Instructions Committee are not binding upon this court, we generally find the committee's work insightful and persuasive. *See Nommensen v. Am. Cont'l Ins. Co.*, 2001 WI 112, ¶ 47, 246 Wis. 2d 132, 629 N.W.2d 301 (referring to Wisconsin Civil Jury Instructions Committee).

often have resulted in the provision of adequate care at the time of the hearing, perhaps even by the time the petition is filed, but it hardly seems logical that this should defeat jurisdiction. The issue is somewhat less clear when the parent or other family members remedy the problems between the filing of the petition and the date of the hearing. Similarly, the TPR ground in Wis. Stat. § 48.415(3) refers to a parent who "is presently . . . an inpatient" in a hospital and to a child who "is not being provided adequate care." Should the parent's discharge on the eve of the hearing or last minute provisions for a child's care defeat jurisdiction? As another example, Wis. Stat. § 48.13(4) provides for CHIPS jurisdiction where a parent signs the petition and states that he or she "is unable to care for the child." If the inability clearly existed at the time of the filing but has completely disappeared by the time of the hearing, should there be jurisdiction?

There is no statutory or published case law guidance on this question of timing, and when the issue does arise, it must be resolved by the court in the context of the particular jurisdictional ground at issue. As a general rule, it is the Committee's opinion that the intent and purpose of the Children's Code are best served by addressing the jurisdictional issue as of the date of removal of the child or the filing of the petition. In particular, the best interests of the child are not served by permitting the child to waffle in and out of the jurisdictional status. Changes or improvements subsequent to court intervention can and should be considered by the court in determining the appropriate dispositional order.

¶ 28. Gregory argues that WIS JI—CHILDREN 180 does not apply.[8] He asserts that JI 180 applies only

---

[8] We ultimately conclude that the circuit court's factual determination whether the child is in need of protection or services that the court can provide must be made as of the date

when there is a single parent involved in the children's lives. He states, "Where there is only one parent, the underlying assumption is that the facts and circumstances as of the date of filing of the petition and the date of the adjudicative hearing are the same." In support of his contention that the court must consider the facts as they exist at the adjudicative hearing, Gregory notes that WIS. STAT. § 48.31(2) uses the present tense when it refers to the court's determination that the child "*is* in need of protection or services which can be ordered by the court." (Emphasis added.) We are unpersuaded.

■

¶ 29. We conclude that the court's determination under WIS. STAT. § 48.13 (intro.) relating to whether the child is in need of protection or services that can be ordered by the court should be made based on facts as they existed at the time the petition was filed.[9] Our conclusion is based on our interpretation of WIS. STAT. §§ 48.13 and 48.31.

■

¶ 30. Statutory interpretation is a question of law that we decide de novo. *Minuteman, Inc. v. Alexander,*

the petition is filed. In that respect, our conclusion is consistent with the reasoning reflected in WIS JI—CHILDREN 180 and the accompanying comment. However, we emphasize that pursuant to WIS. STAT. § 48.31(2), this finding is made by the court, not the jury.

[9] We decline to address whether this same time frame is appropriate for other factual findings made by the court or jury. As the comment to WIS JI—CHILDREN 180 observes, "There is no statutory or published case law guidance on this question of timing, and when the issue does arise, it must be resolved by the court in the context of the particular jurisdictional ground at issue."

147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989). The purpose of statutory interpretation is to discern the intent of the legislature. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). To do so, we first consider the language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, we apply that to the case at hand and do not look beyond the statutory language to ascertain its meaning. *Id.* A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Id.* If a statute is ambiguous, we look to the scope, history, context, subject matter, and object of the statute in order to ascertain legislative intent. *Id.* Whether a statute is ambiguous is a question of law. *Awve v. Physicians Ins. Co.*, 181 Wis. 2d 815, 822, 512 N.W.2d 216 (Ct. App. 1994).

¶ 31. We begin with WIS. STAT. § 48.31(2), which governs the fact-finding hearing. The statute is silent as to whether the court may consider facts developed after the filing of the petition. Gregory argues that use of the present tense in WIS. STAT. § 48.31(2) suggests that the circuit court should make its determination as of the date of the fact-finding hearing. On the other hand, § 48.31(2) refers to "the determination under s. 48.13 (intro.)." The introduction to WIS. STAT. § 48.13 refers to the court's exclusive jurisdiction over a child "alleged" to be in need of protection or services. This suggests that the facts at the time of the allegations are what the court must consider. Because there are two reasonable interpretations of the statute, we conclude that § 48.31(2) is ambiguous with respect to the time frame to be considered when the court makes its determination under § 48.13 (intro.). *See Setagord*, 211 Wis. 2d at 406. Thus, we look to the scope, history,

context, subject matter and object of the statute in order to ascertain legislative intent. *Id.*

¶ 32.	The legislative history of the relevant language in WIS. STAT. § 48.31(2) is helpful. The relevant language was added to § 48.31(2) after the supreme court, citing WIS. STAT. § 48.13 (intro.), affirmed the dismissal of a CHIPS petition that failed to allege and contain facts showing that the child was "in need of protection or services which can be ordered by the court." *See Courtney E.*, 184 Wis. 2d at 601–02. The basis for the CHIPS petition in *Courtney E.* was WIS. STAT. § 48.13(3) (1991–92), that the child was a victim of sexual abuse. *See id.* at 601. The only facts provided in the petition were the child's age and the fact that she was pregnant. *Id.* The petition offered no information to support the allegation that the child was in need of protection or services that the court could provide. *Id.* The court observed:

> It is altogether possible, based on the face of the petition, that Courtney is receiving all of the protection and services that she needs from her family. The legislature could not have intended for courts to have jurisdiction over a pregnant minor in such a situation. We conclude that a sec. 48.13, Stats., CHIPS petition is not sufficient unless it contains information which at least gives rise to a reasonable inference sufficient to establish probable cause that there is something that the court could order for the child that is not already being provided. For example, the petition in this case could have stated that Courtney has been abandoned by her parents; that her parents are unable or refuse to care for her; or that her parents refuse to provide her with the medical care essential for a pregnant minor. In any event, the petition must on its face provide a reason, beyond her pregnancy and age, why Courtney is in need of court-ordered protection or services.

*Id.* at 602.

¶ 33. At issue in *Courtney E.* was the dismissal of the petition prior to the fact-finding stage. However, once *Courtney E.* recognized the need to allege facts showing that the child is in need of protection or services that the court can order, it followed that this same allegation must be proved by clear and convincing evidence at the fact-finding hearing.

¶ 34. Subsequently, the legislature proposed amending WIS. STAT. § 48.31(2) to make the court responsible for making the determination identified in *Courtney E.* The prefatory note accompanying 1995 Senate Bill 501 summarized the proposed changes to WIS. STAT. § 48.31(2):

> Under current law, a child who is the subject of a CHIPS petition or the child's parent, guardian or legal custodian may demand a jury trial to determine whether the allegations of the CHIPS petition are proved. In *In the Interest of Courtney E.,* 184 Wis. 2d 592 (1994), the Wisconsin supreme court held that in order for a juvenile court to exercise jurisdiction over a child alleged to be CHIPS, 2 things must be proved: (a) that one of the grounds for CHIPS jurisdiction exists; and (b) that the child is in need of protection or services that can be ordered by the court.
>
> [The bill] provides that the juvenile court, not the jury, determines whether the child needs protection or services which the juvenile court can order, thus leaving to the jury (or to the court, if a jury trial is not requested) the task of determining whether one of the underlying grounds for CHIPS jurisdiction, such as abandonment, abuse or neglect, has been proved.

¶ 35. The legislation that was ultimately passed added the following underlined language to WIS. STAT. § 48.31(2), making the court responsible for deter-

minations under the introductions to WIS. STAT. § 48.13 and 48.133:

> At the conclusion of the hearing, the court or jury shall make a determination of the facts, *except that in a case alleging a child to be in need of protection or services under s. 48.13, the court shall make the determination under s. 48.13 (intro.) relating to whether the child is in need of protection or services which can be ordered by the court.* If the court finds that the child is not within the jurisdiction of the court or, *in a case alleging a child to be in need of protection or services under s. 48.13, that the child is not in need of protection or services which can be ordered by the court or if* the court or jury finds that the facts alleged in the petition have not been proved, the court shall dismiss the petition with prejudice.

1995 Wis. Act 275 § 52.[10]

¶ 36. According to the legislative note and consistent with *Courtney E.*, the law prior to the amendment to WIS. STAT. § 48.31(2) required that when a CHIPS case proceeded to the fact-finding stage, the fact-finder, whether it was a jury or the court, had to determine whether the allegations were proven with respect to both WIS. STAT. § 48.13 (intro.) and the specific grounds

---

[10] 1995 Wis. Act 275 § 52 also contained a note explaining the reason for the amendments. The note was an edited version of the explanation that appeared in 1995 S.B. 501 as it was originally introduced. The note provided:

> NOTE: Under current law, a child who is the subject of a CHIPS petition or the child's parent, guardian or legal custodian may demand a jury trial to determine whether the allegations of the CHIPS petition are proved. This bill provides that the juvenile court, not the jury, determines whether the child needs protection or services which the juvenile court can order, leaving to the jury the task of determining whether one of the underlying grounds for jurisdiction specified in s. 48.13, such as abandonment, abuse or neglect, has been proved.

alleged under § 48.13(1)-(13). We agree with Wis JI—
CHILDREN 180 that generally the jury should consider
facts as they existed at the time the petition was filed.[11]

¶ 37. The amendment to WIS. STAT. § 48.31(2)
shifted to the court the responsibility for making the
determination relating to WIS. STAT. § 48.13 (intro.). *See*
WIS. STAT. § 48.31(2). Although the fact-finder may have
changed, the legislative history is devoid of any indica-
tion that the factual determination is to be made
differently. Thus, we conclude that the court should
follow the same guidelines that would have guided a
jury. The court should consider facts as they existed at
the time that the petition was filed when making the
determination relating to § 48.13 (intro.).

¶ 38. Our decision supports the paramount goal
of WIS. STAT. ch. 48: to protect children. *See* WIS.
STAT. § 48.01(1)(a). Our legislature has provided that
ch. 48 is to be liberally construed to effectuate numer-
ous express legislative purposes, including:

> (ag) To recognize that children have certain basic
> needs which must be provided for, including the need

---

[11] However, we recognize that there are times when consid-
eration of facts subsequent to the petition may be relevant. For
example, a jury in a termination of parental rights case based on
the continuing need for protection or services must determine
whether it is likely that the parent will meet the conditions for
the safe return of the child within the twelve-month period
following the conclusion of the hearing. *See* WIS.
STAT. § 48.415(2); WIS JI—CHILDREN 324. Evidence concerning
the parent's actions after the filing of the petition may be
relevant to the jury's determination of that issue. In contrast,
where the jury is asked to determine whether the grounds for
CHIPS pursuant to WIS. STAT. § 48.13(10) are proved, the jury
need only determine whether the child was neglected and
whether the child's health was seriously endangered. *See* WIS.
STAT. § 48.13(10); WIS JI—CHILDREN 250.

for adequate food, clothing and shelter; the need to be free from physical, sexual or emotional injury or exploitation; the need to develop physically, mentally and emotionally to their potential; and the need for a safe and permanent family. . . .

. . . .

(bg) 1. To ensure that children are protected against the harmful effects resulting from the absence of parents or parent substitutes, from the inability, other than financial inability, of parents or parent substitutes to provide care and protection for their children and from the destructive behavior of parents or parent substitutes in providing care and protection for their children.

WIS. STAT. § 48.01(1).

¶ 39. The intent and purpose of the Children's Code are best served by determining the child's need for protection or services as of the date the petition is filed. As the comment to WIS JI—CHILDREN 180 notes, the goals of WIS. STAT. ch. 48 would be frustrated by allowing children to waffle in and out of jurisdictional status. To conclude otherwise would allow the jurisdictional status of a case to change daily, depending on the circumstances in the home on a particular day.

¶ 40. Here, for example, the children were in need of immediate protection on March 6, returned to their mother on March 12, and again removed on March 13 when she was arrested for OWI. That Michelle was apparently able to care for the children on March 12 did not alter the fact that the children were neglected on March 6, or that they were again in need of immediate intervention on March 13. The jurisdictional status of the CHIPS petition should not be allowed to fluctuate daily. Rather, changes or improvements after court

intervention can and should be considered by the court in determining the appropriate dispositional order. *Id.*

¶ 41. In summary, we conclude that pursuant to WIS. STAT. § 48.31(2), it is the circuit court's responsibility to determine whether the children were in need of protection or services that the court could order on the date the petition was filed. Here, it was undisputed that as of the date the petitions were filed, the children were in need of out-of-home placement and their mother required counseling and mental health and substance abuse assessments. Accordingly, the circuit court did not err when it concluded that summary judgment in the State's favor was appropriate.[12]

¶ 42. The result of our holding is a recognition that children can be adjudicated to be in need of protection or services even when only one parent has neglected the children. Whether the children are in need will depend on the particular facts of the case. Where, as here, the children were neglected and seriously endangered by one parent, they may be adjudicated in need of protection or services.

¶ 43. In this case, the court ordered that the children be placed with Gregory and that the department provide the family with a variety of services. If, as

---

[12] Even if the circuit court had concluded that the facts with respect to the children's needs on the day the petitions were filed were in dispute, Gregory would not have been entitled to a jury trial on that issue. The two issues for the jury, whether a parent neglected the children and whether the children were seriously endangered, were undisputed. The remaining determination with respect to the children's need for protection or services that the court can order must be made by the circuit court. *See* WIS. STAT. § 48.31(2). Thus, any disputed facts would have been presented in a fact-finding hearing before the circuit court.

Gregory asserts, the children have no future need for protection or services that the court can order, then the court can make the appropriate amendments to the dispositional orders and, ultimately, allow the orders to expire. Although we understand Gregory's frustration with having to comply with dispositional orders entered because his ex-wife neglected the children, the best interests of the children remain our paramount concern. There is no dispute that they were seriously endangered and that, at a minimum, Michelle needs assistance parenting the children in the future. The dispositional orders provide for that assistance.

*By the Court.*—Orders affirmed.