**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 3, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1845**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023JC20

**IN COURT OF APPEALS
DISTRICT IV**

IN THE INTEREST OF G.L.W., A PERSON UNDER THE AGE OF 18:

MONROE COUNTY,

    PETITIONER-RESPONDENT,

  V.

T. B.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Monroe County: TODD L. ZIEGLER, Judge. *Affirmed.*

¶1    KLOPPENBURG, P.J.[1]  T.B. (the mother) appeals a dispositional order finding her son (the child) a child in need of protection or services (CHIPS) and placing the child in out-of-home care.  The mother argues that the circuit court erroneously denied her pretrial petition to transfer jurisdiction of the child's CHIPS case to the Ho-Chunk Nation's tribal court.  The mother also argues that, in the dispositional order, the court erred in granting medical decision-making authority to the Monroe County Department of Human Services (the Department).  I reject the mother's arguments and, therefore, affirm.

## BACKGROUND

¶2    The mother and the child are enrolled members of the Ho-Chunk Nation.  In July 2023, the Department filed a CHIPS petition under WIS. STAT. ch. 48 and the Indian Child Welfare Act regarding the child, who was then 12 years old, along with a Temporary Physical Custody Request.[2]  The petition and request were based on concerns that the parents are unable to provide for the child's medical needs, so as to seriously endanger his physical health.  The child is

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] The Indian Child Welfare Act governs state court child custody proceedings involving Indian children.  *Kewaunee Cnty. Dep't of Hum. Servs. v. R. I.*, 2018 WI App 7, ¶12, 379 Wis. 2d 750, 907 N.W.2d 105 (2017).  The purpose of the Act is to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families."  25 U.S.C. § 1902.  Wisconsin codified these minimum federal standards in WIS. STAT. § 48.028.  *See generally* WIS. STAT. §§ 48.028, 48.31(5), 48.355(2)(b)6v.

diagnosed with Autism Spectrum Disorder, failure to thrive, feeding problem in a child, global developmental delays, Lennox-Gastaut Syndrome (a severe type of epilepsy), and myoclonic seizure disorder. The child requires intensive care and the administration of multiple medications to treat the child's complicated, difficult, and life-threatening illnesses and to prevent severe outcomes.

¶3 After the Department filed the CHIPS petition, the Ho-Chunk Nation intervened in the case. Six attorneys appeared throughout the circuit court proceedings: corporation counsel for the Department, counsel for the father, counsel for the mother, counsel for the child, a guardian ad litem (GAL), and counsel for the Ho-Chunk Nation.

¶4 The circuit court granted the request for temporary physical custody, and the child was placed in the physical custody of the Gundersen Health System, where he had been receiving medical care. The child was subsequently placed with his maternal aunt, in accordance with the Ho-Chunk Nation's placement preference ranking.

¶5 On August 7, 2023, the child's mother and father jointly petitioned for the case to be transferred to the Tribal Court of the Ho-Chunk Nation, pursuant to WIS. STAT. § 48.028(3)(c). The child, by counsel, filed an objection to the transfer petition and stated that counsel for the Ho-Chunk Nation and the GAL

concurred with the objection.  After briefing and a hearing, the circuit court denied the transfer petition.

¶6      A five-day jury trial took place on the CHIPS petition.  During the trial, the jury heard testimony from multiple Department employees, several of the child's doctors and other healthcare providers, the child's teacher, a social worker who prepared Child and Caregiving Risk Assessments and an updated assessment for the child's mother and father, a case manager in the Indian Child Welfare Program with the Ho-Chunk Nation who testified as a qualified expert witness as required by WIS. STAT. § 48.028(4)(d), and the child's mother and father. Consistent with the jury's verdicts, the circuit court found the child in need of protection or services based on each parent's inability to provide for the child's medical needs such that continued custody with each of the parents is likely to result in serious physical damage to the child.

¶7      The circuit court held a dispositional hearing on January 17, 2024. At the hearing, the court adopted the Department's recommendations, ordering that the child continue to be placed with his aunt and granting authority to make all medical decisions for the child to the Department.

¶8     The mother appeals.[3]

## DISCUSSION

¶9     I first summarize the statutory framework regarding CHIPS proceedings and then address the mother's arguments in turn.

¶10     CHIPS proceedings under WIS. STAT. § 48.13 must be initiated by a petition with allegations that are based on "reliable and credible information" and provide "reasonable notice of the conduct or circumstances to be considered by the court." WIS. STAT. § 48.255(1)(e). Once the petition is filed, a fact-finding hearing is required to determine whether those allegations are supported by "clear and convincing evidence." WIS. STAT. § 48.31(1). The circuit court is the fact-finder at this hearing unless, as here, a jury trial is requested. Sec. 48.31(2). If the jury finds that the allegations in the petition are proven by clear and convincing evidence, then the court must determine whether, as a matter of law, the evidence is legally sufficient. *State v. Aimee M.*, 194 Wis. 2d 282, 299, 533 N.W.2d 812 (1995). If so, the court concludes as a matter of law that the child is in need of protection or services. *Id.*; § 48.31(2) and (4).

---

[3] The father has filed a separate appeal, and the opinion in that appeal is being issued concurrently with this opinion. *See Monroe County v. G.L.B.*, No. 2024AP1596, unpublished slip op. (WI App Apr. 3, 2025). Separate opinions are issued in these appeals because of differences in the parties' arguments. However, parts of the analysis in this opinion track the analysis in that opinion when the parties' arguments overlap.

¶11 The circuit court may determine that a child is "in need of protection or services" if the jury finds that "one or more" of the jurisdictional bases set forth under WIS. STAT. § 48.13 are established. *See Aimee M.*, 194 Wis. 2d at 299; *see also* § 48.13 (intro.) ("[T]he court has exclusive original jurisdiction ... if one of the following applies[.]"). The jurisdictional basis at issue here is set forth in § 48.13(10): "The child's parent … is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child." The court's determination as to whether a child is in need of protection or services "should be made based on facts as they existed at the time the petition was filed." *State v. Gregory L.S.*, 2002 WI App 101, ¶29, 253 Wis. 2d 563, 643 N.W.2d 890.

¶12 When, as here, the child "is an Indian child," the jury shall also determine whether continued custody of the child by the child's parent "is likely to result in serious … physical damage to the Indian child under [WIS. STAT. §] 48.028(4)(d)1. and whether active efforts under [§] 48.028(4)(d)2. have been made to prevent the breakup of the Indian child's family and whether those efforts have proved unsuccessful." WIS. STAT. § 48.31(5). Section 48.028(4)(d)1. requires that the jury find "by clear and convincing evidence, including the testimony of one or more qualified expert witnesses" as defined in § 48.028(4)(f), that "continued custody of the Indian child by the parent … is likely to result in serious … physical damage to the child." Section 48.028(4)(d)2. requires that the

jury find "by clear and convincing evidence that active efforts," which are defined in § 48.028(4)(g)1., "have been made to provide remedial services and rehabilitation programs designed to prevent the breakup of the Indian child's family and that those efforts have proved unsuccessful."

¶13 Once the circuit court determines that a child is in need of protection or services, the court must enter a dispositional order setting forth the care and treatment plan for the child. WIS. STAT. § 48.345. Under WIS. STAT. § 48.355(2)(b)6v., a dispositional order removing an Indian child from the child's home must be "supported by clear and convincing evidence, including the testimony of one or more qualified expert witnesses, that continued custody of the Indian child by the parent … is likely to result in serious … physical damage to the child under [WIS. STAT. §] 48.028(4)(d)1. and a finding that active efforts under [§] 48.028(4)(d)2. have been made to prevent the breakup of the Indian child's family and that those efforts have proved unsuccessful." The court's dispositional order should be "consistent with the factual grounds proven at the trial." *Aimee M.*, 194 Wis. 2d at 299; *see also* § 48.355(1) ("In any order under [§] 48.345 ... the judge shall decide on a placement and treatment finding based on evidence submitted to the judge."). The court may consider circumstances subsequent to the petition's filing at the dispositional hearing. *Gregory L.S.*, 253 Wis. 2d 563, ¶4.

## I. Denial of petition to transfer case to tribal court

¶14    The mother argues that the circuit court erroneously denied her pretrial petition to transfer jurisdiction of the child's CHIPS case to the Ho-Chunk Nation's tribal court. Specifically, the mother argues that the court applied an incorrect legal standard when it found good cause to deny the transfer petition based on its consideration of the resources available to the tribal social services department and tribal court.  The mother also argues that the court's decision denying her transfer petition was invalid because the court did not first notify the tribal court of the petition.  The mother's first argument fails because it rests on an inaccurate characterization of the court's decision; the record establishes that the court determined that there is good cause to deny the transfer petition based on the child's objection to the transfer, consistent with WIS. STAT. § 48.028(3)(c).  The mother's second argument fails because the case law on which she relies is distinguishable.

### A.  Applicable statutory language and standard of review

¶15    Under WIS. STAT. § 48.028(3)(c), a parent of an Indian child who does not reside within the child's tribe's reservation may petition the circuit court to transfer the CHIPS proceeding to the jurisdiction of the tribe.  When such a petition is filed, the circuit court "shall … transfer the proceeding to the jurisdiction of the tribe unless any of the following applies:"

1. A parent of the Indian child objects to the transfer.

2. The Indian child's tribe does not have a tribal court, or the tribal court of the Indian child's tribe declines jurisdiction.

3. The court determines that good cause exists to deny the transfer. In determining whether good cause exists to deny the transfer, the court may not consider any perceived inadequacy of the tribal social services department or the tribal court of the Indian child's tribe. The court may determine that good cause exists to deny the transfer only if the person opposing the transfer shows by clear and convincing evidence that any of the following applies:

> a. The Indian child is 12 years of age or over and objects to the transfer.

> b. The evidence or testimony necessary to decide the case cannot be presented in tribal court without undue hardship to the parties or the witnesses and that the tribal court is unable to mitigate the hardship by making arrangements to receive the evidence or testimony by use of telephone or live audiovisual means, by hearing the evidence or testimony at a location that is convenient to the parties and witnesses, or by use of other means permissible under the tribal court's rules of evidence.

> c. The Indian child's tribe received notice of the proceeding under sub. (4) (a), the tribe has not indicated to the court in writing that the tribe is monitoring the proceeding and may request a transfer at a later date, the petition for transfer is filed by the tribe, and the petition for transfer is filed more than 6 months after the tribe received notice of the proceeding or, if the proceeding is a termination of parental rights proceeding, more than 3 months after the tribe received notice of the proceeding.

Sec. 48.028(3)(c).

9

¶16 This appeal involves the interpretation and application of WIS. STAT. § 48.028(3)(c). "'The interpretation and application of statutes present questions of law that we review independently.'" *Brey v. State Farm Mut. Auto. Ins. Co.*, 2022 WI 7, ¶9, 400 Wis. 2d 417, 970 N.W.2d 1 (quoted source omitted). Statutory interpretation "'begins with the language of the statute.' If the meaning of the language is plain, our inquiry ordinarily ends." *Id.*, ¶11 (quoted sources omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. When deciding whether language is plain, courts must read the words in context and with a view to the place of those words in the overall statutory scheme. *Brey*, 400 Wis. 2d 417, ¶11. "Properly applied, the plain-meaning approach is not 'literalistic'; rather, the ascertainment of meaning involves a 'process of analysis' focused on deriving the fair meaning of the text itself." *Id.* (citing *Kalal*, 271 Wis. 2d 633, ¶¶46, 52). "'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.'" *Kalal*, 271 Wis. 2d 633, ¶46 (quoted source omitted).

¶17 This appeal also involves review of the circuit court's discretionary decision that there is good cause warranting denial of the mother's transfer petition. This court will sustain a circuit court's discretionary decision when it

10

examines the relevant facts, applies a proper standard of law, and, using a rational process, reaches a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶18    The mother primarily cites the federal Indian Child Welfare Act in support of her argument as to good cause. *See* WIS. STAT. § 48.028(2)(d) (stating that an out-of-home placement proceeding involving an Indian child is "governed by the federal Indian Child Welfare Act, 25 U.S.C 1901 to 1963"). However, the mother does not argue that the state statute, § 48.028(3)(c), is inconsistent with or differs in any meaningful way from the federal statute, regulations, or guidelines regarding the good cause topic.[4] Accordingly, the analysis that follows is based on the state statute, unless otherwise noted.

---

[4] To clarify, the mother cites the Indian Child Welfare Act and related regulations and guidelines, which, like WIS. STAT. § 48.028(3)(c), provide that a state court may deny a transfer petition for good cause, that good cause includes the objection by the child if the child is over 12 years old, and that good cause excludes consideration of the perceived adequacy of the tribal social services department or the tribal court.

Under 25 U.S.C. § 1911(b), the state court, "in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, [t]hat such transfer shall be subject to declination by the tribal court of such tribe." Unlike the Wisconsin statute, the federal statute does not define "good cause." But, as the mother notes, the Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584-95 (1979), provide, pertinent here, that good cause to deny transfer may exist if "[t]he Indian child is over twelve years of age and objects to the transfer," and that "the perceived adequacy of tribal … social services or judicial systems may not be considered in a determination that good cause exists." 44 Fed Reg. 67,591. The federal regulations similarly provide that the court in making the good cause determination may not consider "any negative perception of Tribal … social services or judicial systems." 25 C.F.R. § 23.118(c).

### B. Additional background

¶19    At the hearing on the parents' petition to transfer, the circuit court noted that the parties did not offer additional evidence on the issue of good cause and proceeded to hear the parties' arguments on the petition. The Department took no position on the petition. The father's counsel explained that the parents are more familiar with the tribal court "process and … players" from a prior out-of-home placement of the child through the tribal court. The mother's counsel agreed with the father's counsel's remarks. Counsel for the Ho-Chunk Nation stated that the Tribe opposes transfer for the reasons stated by the child's counsel (summarized below). In addition, the Tribe's counsel noted that, while not included in the good cause determination, the child has significant needs that will be difficult to meet given the "shortages and resources at the [T]ribe."

¶20    The child's counsel stated that the child's objection is one step in the good cause determination, and that the child's medical record filed in the case "enhances" the weight of that objection. The child's counsel noted that since the child was returned to the home following the prior out-of-home placement, the child's condition had deteriorated as a result of the parents' failure to properly administer medications and to recognize the seriousness of the child's medical conditions. The child's counsel asserted that the child's return to the parents' home is most likely to occur if the parents work with and learn from the medical professionals already long involved in the child's care through the Department,

and that the Department has the resources to make the child's return home happen. The GAL agreed with the child's counsel's remarks.

¶21    The circuit court noted that it must determine whether good cause exists and that the use of the word "may" in the statute means that the court has discretion whether to deny transfer if good cause does exist. The court noted that the clear and convincing evidence standard for proving good cause is not an issue because the child is at least 12 years old and has objected through counsel. The court then considered that the child's objection must be taken seriously, and that the GAL's support of the child's objection weighs in favor of denying transfer, while the parents' request for transfer "weighs somewhat in favor" of granting transfer. The court concluded both that good cause exists, based on the child's objection, and that denial of transfer is warranted. The court reiterated that, "I am determining that the good cause exists and that the good cause exists such that I will deny transfer to tribal court at this time."

## C.  Analysis

¶22    Relevant here, the statute provides that a circuit court "shall" grant a petition for transfer unless the court determines "that good cause exists to deny the transfer." WIS. STAT. § 48.028(3)(c)3. The statute circumscribes the court's determination of good cause in two respects: (1) good cause excludes consideration of the perceived capacities of or resources available to the tribal

13

social services department or the tribal court; and (2) good cause includes consideration only of the three circumstances described in the statute. Sec. 48.028(3)(c)3. One of those circumstances is that the child "is 12 years of age or over and objects to the transfer." Sec. 48.028(3)(c)3.a. If any of those three circumstances exist, then the court "may" determine that good cause exists to deny the transfer. Sec. 48.028(3)(c)3.

¶23 We agree with the circuit court that the use of "may" in the final sentence of WIS. STAT. § 48.028(3)(c)3. connotes an exercise of discretion *after* the court has determined the existence of one of the three circumstances within the statute's mandatory dictates. In other words, once the court determines that one of the three circumstances delimited by the statute exists, the court may in its discretion determine that there is good cause warranting denial of the transfer.

¶24 Here, consistent with this plain language interpretation of the statute, the circuit court first determined that good cause may exist based on the objection to transfer by the 12-year-old child. As summarized above, the court then determined that the child's objection and the GAL's support of the child's objection weigh more heavily in favor of denying transfer than the parents' request for transfer weighs in favor of granting transfer. Having engaged in that weighing, the court concluded that good cause exists to deny the transfer.

¶25 The mother argues that the circuit court erred in determining the existence of good cause based on its "perception" that the tribal social services department and the tribal court lacked sufficient resources. As I explain, the record refutes this argument.

¶26 The court did note at the start of its oral ruling that it was not certain whether, once it determined that one of the circumstances that may constitute good cause exists, the statute's use of the word "may" allowed it to consider "that there might not be as many resources through tribal social services." But the court said that that consideration did not affect its decision, and the record as summarized above establishes that the court did not consider that factor in making its decision.

¶27 The circuit court did acknowledge that potential delays in the tribal court are concerning, given the extensive network of care providers "already working on" the child's many different medical issues in what the court deemed "a priority case." But the court did so only after it had stated its decision and in response to remarks that the father made after the court stated its decision. And the court did so to reinforce the crux of its response to the father's remarks, that it is important for the parents to move forward within the network already in place, in order to work towards the child's return to the parents' home. Thus, the court did not, as the mother argues, consider the perceived inadequacy of tribal resources in determining that good cause exists to deny transfer.

¶28 The mother also argues that the circuit court's decision denying transfer was invalid because the court did not first notify the tribal court of the transfer petition. As the mother notes, 25 U.S.C. § 1911(b), like WIS. STAT. § 48.028(3)(c), provides that the state court may not grant transfer if the tribal court declines transfer. 25 U.S.C. § 1911(b); WIS. STAT. § 48.028(3)(c)2. More specifically, the federal statute provides that, in the absence of good cause to deny transfer, a circuit court shall grant transfer, "subject to declination by the tribal court." 25 U.S.C. § 1911(b). Similarly, § 48.028(3)(c)2. and 3. provide that a circuit court shall grant transfer "unless … the tribal court declines jurisdiction" or "[t]he court determines that good cause exists to deny the transfer." Thus, under both federal and state law, the state court's failure to ascertain whether the tribal court declines jurisdiction may invalidate the state court's denial of transfer only in the absence of good cause to deny transfer. Because I have rejected the mother's argument that the circuit court here denied transfer without an appropriate finding of good cause, the mother's argument fails.

¶29 The mother also cites language in ***Brown County v. Marcella G.***, 2001 WI App 194, ¶14, 247 Wis. 2d 158, 634 N.W.2d 140, that "once the circuit court received Marcella's request for transfer, it should have notified the tribal court of the proposed transfer." However, that case is easily distinguished. In that case, Brown County petitioned to terminate Marcella's parental rights to her four children, three of whom were enrolled in the Three Affiliated Tribes of the Fort

16

Berthold Reservation, North Dakota (referred to in the opinion as "the Tribe"). *Id.*, ¶¶1, 3. The Tribe filed a motion to transfer jurisdiction with respect to the three enrolled children to the tribal court. *Id.*, ¶3. The Tribe supported its motion with a tribal court order accepting jurisdiction. *Id.* The circuit court held a hearing on the motion at which Brown County presented a memorandum of understanding in which the Tribe withdrew its motion to transfer jurisdiction. *Id.*, ¶4. Marcella objected to the memorandum and orally moved the court to transfer jurisdiction to the tribal court. *Id.*, ¶5.

¶30 The circuit court denied Marcella's motion to transfer based on what this court determined was the erroneous determination that Marcella lacked standing to request transfer. *Id.*, ¶¶5, 7. This court also determined that the circuit court erroneously accepted the Tribe's withdrawal of its motion to transfer without having been presented with "any documentation suggesting that the tribal court had withdrawn its order accepting jurisdiction." *Id.*, ¶¶4, 14. This court noted that the circuit court "should have contacted the tribal court to ascertain its intentions" given the existing tribal court order accepting jurisdiction. *Id.*, ¶14 n.10.

¶31 The facts in *Marcella G.* are distinguishable in two important respects. First, unlike in *Marcella G.*, the circuit court here properly denied the mother's transfer petition based on one of the statutory prerequisites for denial, namely, the existence of good cause. Thus, there was no transfer of jurisdiction for the tribal court to decline. Second, unlike in *Marcella G.*, no tribal court order

accepting jurisdiction was presented to the circuit court here. Therefore, no follow-up with the tribal court was required once the circuit court denied the transfer petition based on the existence of good cause, under the above-stated plain language analysis of WIS. STAT. § 48.028(3)(c)3. and the above-quoted language of 25 U.S.C. § 1911(b). To repeat, the mother's argument is ultimately premised on the absence of an appropriate finding of good cause for denying transfer. Because I have rejected that premise, the mother's argument that the court erred in failing to notify the tribal court of her transfer petition fails.

## II. Grant of medical decision-making authority to the Department

¶32 The mother challenges the term in the dispositional order that grants medical decision-making authority to the Department.[5]

¶33 This court reviews a circuit court's dispositional order for an erroneous exercise of discretion. *State v. Richard J. D.*, 2006 WI App 242, ¶5, 297 Wis. 2d 20, 724 N.W.2d 665. "The circuit court properly exercises its discretion when it examines the relevant facts, applies the proper legal standard, and uses a rational process to reach a reasonable conclusion." *Id.*

---

[5] The dispositional order transfers decision-making authority to the Director of the Department. For ease of reading, this opinion uses the shorthand reference "Department" for the "Director of the Department."

¶34     At the dispositional hearing, the circuit court specifically addressed "the medical decision[-]making issue."  The court stated that at trial

> the primary concern … was the medical care for [the child], missing appointments, addressing medical advice, et cetera.
>
> I'm satisfied that … it's appropriate to grant the County's request, in that the human services director would be designated to make medical decisions, or her designee, and that the MyChart system would provide access to the parents, except the parents would not be able to change or cancel or modify any appointments.

The court stressed that the parents "would be involved in making all significant medical decisions" and

> should be consulted.  This is something that we can revisit throughout the case, and [the] parents can show their ability to make those decisions in [the child's] best interests by making sure they are at appointments, not missing appointments, … being engaged in the medical appointments, and giving appropriate input regarding medical decisions.

¶35     The circuit court subsequently issued, as part of its dispositional order, an order for "medical or other treatment authorization" that provides as follows:

> The Director of the Monroe County Department of Human Services … or the Director's designee is hereby granted legal authority, by Order of the Monroe County Circuit Court, to sign all medical consents or authorizations for [the child] to receive medical care, surgical procedures, mental health treatment, or care, dental treatment or care, or medical testing.
>
> Prior to the Director of the Monroe County Department of Human Services authorizing any action, both parents … need to be made aware of the request and they need to be provided details regarding the request or procedure.  Their

19

> position, along with any concerns, needs to be provided to Director of Human Services for consideration.
>
> The parents … have the right to access medical information and meet with medical staff. The Gundersen My[C]hart system can still be accessed by the parents if it can be set up to allow them viewing access only. The parents are not allowed to reschedule, modify, or cancel any appointments or procedures for [the child]. The parents shall not interfere with medication management.

¶36 The mother contends that the circuit court misapplied the law. Specifically, the mother argues that the court's order violates WIS. STAT. § 48.373, which provides that the circuit court "may authorize medical services including surgical procedures when needed if the court … determines that reasonable cause exists for the services and that the minor … consents." The mother argues that the court's order "bypasses the need to show [reasonable] cause" for any specific medical service. This argument fails because the court did not proceed under that statute. Because the mother does not argue that the order is improper on any other basis, I reject the mother's challenge as unsupported by relevant legal authority. *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.**, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments." (citations omitted)).

## CONCLUSION

¶37 This court affirms the circuit court's dispositional order for the reasons stated.

20

*By the Court.*—Order affirmed.

This opinion will not be published. *See* W<small>IS.</small> S<small>TAT.</small> R<small>ULE</small> 809.23(1)(b)4.