IN RE the INTEREST OF JASON P. S., A Person Under the Age of 18:

STATE of Wisconsin, Petitioner-Respondent,†

v.

PATRICIA A. P., Respondent-Appellant.

Court of Appeals

*No. 95–1164. Submitted on briefs July 10, 1995.—Decided July 13, 1995.*

(Also reported in 537 N.W.2d 47.)

†Petition to review denied.

For the respondent-appellant the cause was submitted on the brief of *Judith L. Maves-Klatt* of La Crosse.

For the petitioner-respondent the cause was submitted on the brief of *William A. Shepherd*, Assistant Corporation Counsel, La Crosse.

For Jason P.S. the cause was submitted on the brief of *Beverly A. Fleishman* of La Crosse.

Before Gartzke, P.J., Dykman and Vergeront, JJ.

GARTZKE, P.J.  Patricia A.P. is the mother of Jason P.S., born March 24, 1983. She appeals from an order terminating her parental rights to her son.[1] The issue is whether, as Patricia contends, she was deprived of her rights without due process of law contrary to the Fourteenth Amendment to the United States Constitution. She bases her contention on the differences between the notice of the grounds for termination she received in the prior proceedings finding

---

[1] Originally assigned as a one-judge appeal under § 752.31 (2)(e), STATS., this case was reassigned to a three-judge panel by order of the chief judge. *See* RULE 809.41(3), STATS. We invited the attorney general to participate in the appeal. He declined the invitation. The appeal has been expedited. RULE 809.107(6) (e), STATS.

Jason to be a child in need of protection or services (CHIPS) and the grounds the State employed to terminate her rights. We agree with Patricia's contention. We therefore reverse the order terminating her rights to her son.[2]

The pertinent statutes are §§ 48.356 and 48.415, STATS. Because of their importance, we provide the relevant portions of each.

Section 48.356, STATS., provides:

(1) Whenever the court orders a child to be placed outside his or her home because the child has been adjudged to be in need of protection or services under s. 48.345, 48.357, 48.363 or 48.365, the court shall orally inform the parent or parents who appear in court of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child to be returned to the home.

(2) In addition to the notice required under sub. (1), any written order which places a child outside the home under sub. (1) shall notify the parent or parents of the information specified under sub. (1).

Section 48.415, STATS., 1991-92, before its amendment in May 1994, provided in relevant part:

At the fact-finding hearing the court or jury may make a finding that grounds exist for the termination of parental rights. Grounds for

---

[2] RULE 809.19(1)(f), STATS., requires that a brief contain "[a] short conclusion stating the precise relief sought." Patricia seeks reversal of the order terminating her parental rights. The State seeks affirmance. Because no middle course is sought and argued, and because we accept Patricia's contention, we reverse the order.

termination of parental rights shall be one of the following:

. . . .

(2)   Continuing need of protection or services may be established by a showing of all of the following:

(a)   That the child has been adjudged to be in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.357, 48.363 or 48.365 containing the notice required by s. 48.356(2).

(b)   That the agency responsible for the care of the child and the family has made a diligent effort to provide the services ordered by the court.

(c)   That the child has been outside the home for a cumulative total period of one year or longer pursuant to such orders, the parent has substantially neglected, wilfully refused or been unable to meet the conditions established for the return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions in the future.

Section 48.415, STATS., was amended effective May 5, 1994, by 1993 Wis. Act 395, § 25, and provides in relevant part:

At the fact-finding hearing the court or jury may make a finding that grounds exist for the termination of parental rights. Grounds for termination of parental rights shall be one of the following:

. . . .

(2)   Continuing need of protection or services may be established by a showing of all of the following:

859

(a)   That the child has been adjudged to be in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.357, 48.363 or 48.365 containing the notice required by s. 48.356(2).

(b)   That the agency responsible for the care of the child and the family has made a diligent effort to provide the services ordered by the court.

(c)   That the child has been outside the home for a cumulative total period of one year or longer pursuant to such orders or, if the child had not attained the age of 3 years at the time of the initial order placing the child outside of the home, that the child has been outside the home for a cumulative total period of 6 months or longer pursuant to such orders; and that the parent has failed to demonstrate substantial progress toward meeting the conditions established for the return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions within the 12-month period following the fact-finding hearing under s. 48.424.

Beginning in 1987, dispositional orders were entered in five CHIPS proceedings relating to Patricia and her son. Attached to each of the four most recent orders was a written warning that her parental rights could be terminated based on the grounds in the then current version of § 48.415(2)(c), STATS., each of which read the same as § 48.415(2)(c), 1991-92, (cited earlier in this opinion). Each order described those grounds.[3] The last CHIPS proceeding began in the fall of 1993.

---

[3] The warning attached to the earliest order, the 1987 order, quoted the grounds for termination provided in § 48.415 (2)(c), STATS., 1985-86.

The last CHIPS proceeding resulted in a dispositional order dated January 19, 1994, attached to which was the following:

SPECIAL WARNING FOR PARENTS OF THIS CHILD

The parents are hereby notified that grounds may exist for the termination of their parental rights to the child if the child remains outside the home pursuant to this order and any subsequent orders;

. . . .

B. For a cumulative total period of one year or longer, if the parents *substantially neglect, willfully refuse, or are unable to meet the conditions established for the return of the child to the home, if there is a substantial likelihood that the parents will not meet these conditions in the future*, and if the agency responsible for the care of the child and the family has made a diligent effort to provide the services ordered by the court.

(Emphasis added.)

On September 2, 1994, after the most recent extension had been in effect for less than one year and after the effective date of the new § 48.415(2)(c), STATS., the La Crosse Department of Human Services petitioned to terminate Patricia's right to her son. The petition alleged the modified grounds for termination in the new § 48.415(2)(c).

Before the trial began, Patricia's counsel moved to dismiss the petition. He argued that to proceed with the petition on grounds other than those given in the warnings Patricia received would violate her right to due process. The trial court denied the motion to dismiss and allowed the County to proceed under the new § 48.415(2)(c). Patricia objected at the instructions con-

ference to the charge to the jury based on the new statute.

■

Where, as here, the facts are undisputed, the application of the United States Constitution to those facts is a question of law which we decide without deference to the trial court's ruling. *State v. Comstock*, 168 Wis. 2d 915, 921 n.2, 485 N.W.2d 354, 356 (1992).

■

Parents have a fundamental liberty interest in matters of family life. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *In re Interest of Philip W.*, 189 Wis. 2d 432, 436, 525 N.W.2d 384, 385 (Ct. App. 1994).

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*Santosky*, 455 U.S. at 753-54 (footnote omitted).

■

A parent's liberty interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Philip*, 189 Wis. 2d at 436, 525 N.W.2d at 385. State intervention to terminate the relationship between a parent and a child must be accomplished by procedures meeting the requisites of

862

the Due Process Clause. *Id.* at 436-37, 525 N.W.2d at 385-86. The State's power to terminate can only be exercised under procedures which assure that the power is justly exercised. *Id.* at 437, 525 N.W.2d at 386.

In an analogous area, when juvenile authorities allege that a condition of probation has been violated, fundamental fairness requires that the juvenile has been given some warning in advance that particular conduct could lead to revocation of probation. *G.G.D. v. State*, 97 Wis. 2d 1, 9, 292 N.W.2d 853, 857 (1980). "[T]he liberty of the probationer cannot be forfeited unless fair warning has been given to him. When probation is revoked based on a condition not formally given, the record must be closely examined to determine whether adequate notice was given to constitute fair warning." *Id.* at 10-11, 292 N.W.2d at 857.

Similarly, when the State warns a parent that his or her rights to a child may be lost because of the parent's future conduct, if the State substantially changes the type of conduct that may lead to the loss of rights without notice to the parent, the State applies a fundamentally unfair procedure. That is what has happened here.

Before the petition was filed, Patricia was warned in material part that her rights could be terminated if she "has substantially neglected, willfully refused or been unable to meet the conditions established for the return of the child to [her] home," the ground in the old statute. But the petition proposed termination because Patricia "failed to demonstrate substantial progress toward meeting the conditions established for the return of the child to the home," the ground in new § 48.415(2)(c), STATS.

863

The change in the type of conduct for which termination is risked under the old and new statutes is not merely a matter of degree. It is a change in quality of the very nature of the acts leading to termination. The notice to Patricia under the old § 48.415, STATS., told her she faced the loss of her parental rights only for culpable conduct—substantial neglect or willful refusal—or for inability to meet the conditions established for the return of the child to her. Inability is not fault based and need not involve culpable conduct but its proof requires the State to show that for reasons beyond the parent's control, the conditions have not been met.

■■

The ground for termination under the new law requires no showing of neglect, willfulness or inability. Under the new law Patricia faced loss of her parental rights, in material part, merely because she "failed to demonstrate substantial progress toward meeting the conditions established for the return of the child." The reasons for the lack of substantial progress are irrelevant. Under the old law, the reasons for failure to meet the conditions established for the return of the child must be shown. Without a showing of those reasons, termination could not occur under the old law.

The change in the type of conduct for which termination is possible changes the burden on the State. The ground under the new law is far easier to establish than the grounds under the old law. Under the new law, the ground for termination is purely objective: whether there has been a lack of substantial progress. Under the old law, the grounds are more stringent and are partly subjective.

We conclude that because Patricia was deprived of her parental rights without due process, the order must be reversed.

*By the Court.*—Order reversed.