**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 9, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.** **2020AP489-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CM3449

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

     PLAINTIFF-RESPONDENT,

  V.

JAMES E. BROWN,

     DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: DANIEL J. GABLER, Judge. *Reversed and cause remanded*.

¶1 DONALD, J.[1] James E. Brown appeals a judgment of conviction, following a guilty plea, of one count of carrying a concealed weapon. Brown

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

argues that Milwaukee police lacked reasonable suspicion to stop his vehicle. We agree and conclude that even if the initial stop was lawful, police lacked reasonable suspicion to extend the traffic stop. Accordingly, we reverse the judgment of conviction and remand the matter with directions consistent with this opinion.

## BACKGROUND

¶2    On October 26, 2018, Brown was charged with one count of carrying a concealed weapon and one count of resisting an officer. According to the criminal complaint, police responded to a shots fired complaint at 8940 West Carmen Avenue, Milwaukee. The complaint further states that the "suspect was described as a Black male wearing a black hoodie and shorts." When police arrived at the scene, they observed a gray Mazda driving in the vicinity and a driver matching the description of the suspect. Police initiated a traffic stop and made contact with Brown. According to the complaint, Brown locked his doors and refused to exit the vehicle for twenty-five minutes. When Brown exited the vehicle, police observed the bulge of a gun in Brown's pocket. Brown was subsequently arrested and charged.

¶3    Brown filed a motion to suppress the evidence, arguing that it was obtained as a result of an unlawful traffic stop because police lacked reasonable suspicion to stop the vehicle. At a hearing on the motion, Milwaukee Police Officer Nicholas Schlei testified that on the night of October 24, 2018, he and his partner were dispatched to the area of 8940 West Carmen Avenue to investigate a shots fired complaint. Schlei testified that he heard the shots from several blocks away, but that a 911 caller "indicated that they heard five gunshots and that there was a black male wearing what she said was a black hood[ie] and shorts that she

observed with a gun." Schlei testified that the caller did not provide a description of the vehicle, but that when he arrived in the area of the complaint, he observed a gray vehicle driving down the street near the area where the shots were fired. Schlei used a spotlight in the squad car to illuminate the interior of the vehicle. Officers observed that the driver of the vehicle was a black male wearing a dark-colored hooded sweatshirt and that there did not appear to be other occupants in the vehicle. Police activated their lights and made contact with Brown, who braked and pulled over. Schlei testified that Brown was not wearing a black hoodie and shorts, rather he was wearing a maroon sweatshirt and pants. Schlei stated that he asked Brown whether he had a weapon and that he "explained to [Brown] the nature of the call we were investigating and … [Brown's] likeness to wearing a dark colored hooded sweatshirt," but that he did not ask Brown about whether Brown knew anything about the shots fired complaint. Schlei asked Brown to roll down his window, but Brown refused to do so. Schlei testified that Brown kept his hands visible, per Schlei's request, and that Schlei did not sense an immediate threat. Schlei asked Brown to exit the vehicle, which Brown also refused to do after locking his car doors. Brown asked to speak with a supervisor and exited the vehicle after a supervisor arrived on the scene. When Brown exited the vehicle, officers noticed the bulge of a weapon in Brown's pocket and he was subsequently arrested.

¶4 The circuit court denied Brown's motion, finding that officers had reasonable suspicion to stop Brown's vehicle. Brown pled guilty to one misdemeanor count of carrying a concealed weapon. The resisting or obstructing an officer charge was dismissed but read in. Brown was sentenced to four days in the House of Correction, time served, and was ordered to provide a DNA sample, to pay the DNA surcharge, and to pay all other costs and surcharges.

¶5     This appeal follows.

## DISCUSSION

¶6     On appeal, Brown argues that, under the totality of the circumstances, police lacked reasonable suspicion to stop his vehicle. Alternatively, Brown contends that "[e]ven if police had reasonable suspicion to initially stop … Brown's vehicle, the stop should have ended when police observed that … Brown did not match the 911 caller's description of the man with a gun." (Emphasis omitted.)  We agree.

¶7     When we review a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous.  *See State v. Eckert*, 203 Wis. 2d 497, 518, 553 N.W.2d 539 (Ct. App. 1996).  However, the application of constitutional principles to those facts is a question of law that we decide without deference to the circuit court's decision.  *See State v. Patricia A.P.*, 195 Wis. 2d 855, 862, 537 N.W.2d 47 (Ct. App. 1995).

¶8     A traffic stop does not violate the Fourth Amendment's prohibition against unreasonable searches and seizures when an officer has reasonable suspicion to believe a crime or traffic violation has been or will be committed by the vehicle's occupants.  *See* WIS. STAT. § 968.24; *State v. Houghton*, 2015 WI 79, ¶21, 364 Wis. 2d 234, 868 N.W.2d 143.  This standard requires that the stop be based on more than an officer's "inchoate and unparticularized suspicion or hunch."  *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  Rather, an officer's reasonable suspicion must be supported by articulable facts that wrongful activity may be afoot.  *See United States v. Sokolow*, 490 U.S. 1, 7 (1989).  "The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or

4

her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." *Post*, 301 Wis. 2d 1, ¶13.

¶9 Whether an officer's suspicion is reasonable is a common sense test that turns on the totality of the facts and circumstances. *Id.* In assessing the totality of the circumstances for a traffic stop, "a driver's actions need not be erratic, unsafe, or illegal to give rise to reasonable suspicion." *Id.*, ¶24.

¶10 We conclude that under the totality of the circumstances, the initial stop of Brown's vehicle was unlawful. Here, officers responded to a shots fired complaint in which the shooter was described as a black male wearing a black hoodie and shorts. When officers arrived on the scene a few minutes later, they observed a gray vehicle in the vicinity. Officers shined a light into the vehicle and observed a single occupant wearing a dark sweatshirt. Schlei admitted that the dispatch call did not describe the vehicle in which the shooter left the scene. In short, as Brown contends, the sole basis for the officer's initial stop of the vehicle was that Brown was a black man wearing a dark sweatshirt. "Ubiquitous or vague physical descriptions or general locations, without more, are not enough to support reasonable suspicion." *See United States v. Street*, 917 F.3d 586, 595 (7th Cir. 2019) (citation omitted). The facts of this case simply do not reach reasonable suspicion because the record lacks clear and specific, articulable facts to uphold a finding of reasonable suspicion.

¶11 However, even if the initial stop of Brown's vehicle was lawful, we contend that the extension of the stop was unlawful and still warrants suppression

of the evidence against Brown.[2]  A reasonable seizure can transform into an unreasonable one if it extends the stop beyond the time necessary to fulfill the purpose of the stop.  *See State v. Griffith*, 2000 WI 72, ¶54, 236 Wis. 2d 48, 613 N.W.2d 72.  Expanding "the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion."  *State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124.  In other words, if a police officer wishes to extend a lawful traffic stop beyond its original purpose, he or she must have reasonable suspicion to do so.  *See id.*

¶12    When the officers activated their squad lights, Brown pulled over immediately.  When Schlei made contact with Brown, he saw that Brown's clothing did not match the description provided by the 911 caller—the sole purpose of the stop.  Moreover, Brown kept his hands visible and did not engage in any furtive movements.  Rather, Brown refused to roll down his window and refused to exit the vehicle without speaking with an officer of a higher ranking.  However, Brown remained in his vehicle—inactive—for twenty-five minutes until a higher ranking officer arrived on the scene.  Schlei admitted that Brown did not appear to pose an immediate threat, but also that Brown was not free to leave at that time.  The officers, however, did not ask Brown whether he was aware of the shots fired report.  Given the totality of the circumstances, we conclude that officers did not have reasonable suspicion to extend the stop of Brown's vehicle beyond their original purpose.

---

[2] The parties dispute whether Brown raised a challenge to the extension to the traffic stop in the circuit court.  We conclude that the issue was appropriately raised.  Although Brown told the circuit court that he was not challenging the arrest, he did state multiple times that the traffic stop was unlawfully extended.  Accordingly, we review the issue on appeal.

¶13 For the foregoing reasons, we reverse the judgment of conviction and remand the matter with directions consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.