# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 24, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2021AP1683**
**2021AP1685**
**2021AP1686**

Cir. Ct. Nos.  2021JC1
2021JC2
2021JC3

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

NO. 2021AP1683

IN THE INTEREST OF N.A., A PERSON UNDER THE AGE OF 18:

PORTAGE COUNTY,

PETITIONER-RESPONDENT,

V.

D. A.,

RESPONDENT-APPELLANT,

R. A.,

RESPONDENT-RESPONDENT.

**No. 2021AP1685**

**IN THE INTEREST OF D.A., A PERSON UNDER THE AGE OF 18:**

**PORTAGE COUNTY,**

> **PETITIONER-RESPONDENT,**

**V.**

**D. A.,**

> **RESPONDENT-APPELLANT,**

**R. A.,**

> **RESPONDENT-RESPONDENT.**

**No. 2021AP1686**

**IN THE INTEREST OF N.A., A PERSON UNDER THE AGE OF 18:**

**PORTAGE COUNTY,**

> **PETITIONER-RESPONDENT,**

**V.**

**D. A.,**

> **RESPONDENT-APPELLANT,**

**R. A.,**

> **RESPONDENT-RESPONDENT.**

APPEALS from orders of the circuit court for Portage County: PATRICIA BAKER, Judge. *Affirmed*.

¶1 FITZPATRICK, J.[1] David appeals orders of the Portage County Circuit Court adjudging his three children to be in need of protection or services, and he appeals the accompanying dispositional orders.[2] David argues that there was insufficient evidence that the children were in need of protection or services for neglect under WIS. STAT. § 48.13(10), substantial risk of neglect under § 48.13(10m), and emotional damage under § 48.13(11). David also argues that the court erroneously exercised its discretion in placing the children with the children's mother and allowing visitation in the discretion of Portage County Department of Health and Human Services ("the County"). Finally, David argues that the court deprived him of procedural due process. I reject David's arguments and affirm.

## BACKGROUND

¶2 The following facts are taken largely from testimony at the fact finding hearing and dispositional hearing.

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted. These appeals have been consolidated for purposes of briefing and disposition.

[2] Consistent with the parties' briefing, I use the pseudonym "David" for appellant D.A., "Rachel" for R.A., "Nancy" for N.A. (2021AP1683), "Donald" for the minor, D.A. (2021AP1685), and "Natalie" for N.A. (2021AP1686). Rachel was named as a respondent in this appeal, but she has neither appeared nor filed a brief in this appeal.

¶3	David and Rachel were married in 2010 and have three children together: Nancy (born in 2012), Donald (born in 2013), and Natalie (born in 2017). Until 2019, David and Rachel lived together with the children in Waushara County.

¶4	In November 2019, a physical altercation occurred between Rachel and David in front of all three children. After this altercation, Rachel moved out of the home, eventually settling in Portage County. David filed an action affecting the family in Waushara County and, based on an order in that action, David and Rachel each had 50% placement with the children from January 2020 until January 2021. *See* WIS. STAT. § 767.001(1).

¶5	In October 2020, the County opened an investigation after receiving a Child Protective Services ("CPS") report alleging the physical abuse of Rachel and David's children. Based on the information gathered during this investigation, the County filed a CHIPS[3] petition regarding each of the three children in January 2021. These petitions included allegations that the children were: the victims of abuse or at substantial risk of becoming victims of abuse under WIS. STAT. § 48.13(3) and (3m); suffering emotional damage under § 48.13(11); and being neglected or put at substantial risk of neglect under § 48.13(10) and (10m). After the petitions were filed, the circuit court ordered that Rachel be given temporary physical custody of the children based on the recommendation of the children's guardian ad litem. The court also appointed a psychologist to examine the

---

[3] "CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code." *Marinette Cnty. v. Tammy C.*, 219 Wis. 2d 206, 208 n.1, 579 N.W.2d 635 (1998).

children pursuant to WIS. STAT. § 48.31(4).[4]  The parties waived the right to a jury trial and agreed that the court would act as fact-finder.  *See* § 48.31(2).

¶6      At the fact-finding hearing on these petitions, the circuit court heard testimony regarding the behavior of the parents and the children beginning around the time of the domestic violence incident in November 2019 and ending around the time that the CHIPS petitions were filed in January 2021.  That testimony is summarized in the following paragraphs.

¶7      Both parents physically disciplined the children, with Rachel spanking the children with a wooden spoon and David using what he referred to as a "Puritanical" method of discipline by spanking the children with a semi-open fist with the knuckles exposed.  The children were reportedly fearful of punishment in both homes.  There was also a history of physical and emotional abuse between Rachel and David leading up to their separation in 2019, including the physical altercation described earlier.

¶8      Additionally, as the circuit court later found, the children were being emotionally "weaponized" by the parents.  The children were confronted by both parents about their conversations with social workers and counselors regarding the

---

[4] WISCONSIN STAT. § 48.31(4) provides, in relevant part:

> In cases alleging a child to be in need of protection or services under s. 48.13 (11), the court may not find that the child is suffering emotional damage unless a licensed physician specializing in psychiatry or a licensed psychologist appointed by the court to examine the child has testified at the hearing that in his or her opinion the condition exists, and adequate opportunity for the cross-examination of the physician or psychologist has been afforded.

ongoing action affecting the family and the CPS investigation, were forced by each parent to lie about the other parent's behavior, and were disciplined by both parents as a result of those lies. The children were also conditioned to distrust and fear Rachel. For example, Nancy was told that Rachel wanted to harm her, and Nancy was reportedly given instructions from David to use physical force to protect herself. As a result, Nancy stated that she was scared to be around her mother.

¶9 Moreover, the children often exhibited what one witness described as "extremely aggressive and inappropriate" behavior. As two examples of several, the court heard an audio recording in which the children were screeching and crying, chanting curses at Rachel, saying Rachel needed to obey David, and accusing Rachel of allowing a boyfriend to sexually assault Natalie. A separate video portrayed an exchange between Rachel and Donald in which Donald stated that he would use a knife to force Rachel to give him a toy.

¶10 Further, the children were unable to form a beneficial relationship with a counselor. Rachel testified that, after she and David separated, she was unable to take the children to counseling because she lacked insurance and was unable to drive. David took the children to appointments with three different counselors at times in 2020, but the children only had one appointment with the first counselor in January 2020, then visited the second counselor until he retired in February 2020. David began taking the children to a third counselor sometime in the summer of 2020, but he terminated those appointments in October 2020 based on concerns about the counselors' lack of licensing. Even after the County suggested a list of neutral counselors, the parents had not taken the children to a counseling appointment by the time the CHIPS petitions were filed.

¶11     In addition to the testimony just described, the court heard testimony from Dr. Engen—the court-appointed psychologist—who made the following diagnoses of the children:  Nancy suffered from unspecified trauma and other stressor-related disorders, as well as four out of five symptoms of Post-Traumatic Stress Disorder ("PTSD"), relating to her fear that her mother was going to harm her; Donald met all criteria for PTSD, also relating to his fear of Rachel and his lack of trust of his parents; and Natalie suffered from an unspecified trauma and other stressor-related disorder.

¶12     The circuit court found that the children were in need of protection and services.  The court found that all three children were suffering emotional damage pursuant to WIS. STAT. § 48.13(11) and that the parents failed to take necessary steps to ameliorate the children's symptoms.  The court also found that Nancy was neglected pursuant to § 48.13(10) and that Donald and Natalie were at a substantial risk of being neglected pursuant to § 48.13(10m).  Finally, the court dismissed the physical abuse allegations pursuant to § 48.13(3) and (3m) because there was no evidence that the children were physically abused according to the statutory definition.[5]

¶13     The court then held a dispositional hearing in which it ordered that the children be placed with Rachel with supervision continuing for one year, and that David's visitation with the children be at the discretion of the County.  In reaching this decision, the court emphasized that David had generally refused to

---

[5] The circuit court stated that the "striking of children or any kind of physical confrontation with the children was, from my perspective, completely within the bounds of parental discipline, which is allowed in the state of Wisconsin."

work with the County, whereas Rachel had cooperated with the County and followed many of the County's recommendations.

¶14    David appeals the circuit court's orders for all three children. This court granted David's motion to consolidate the three appeals.

¶15    Additional facts are provided later in this opinion.

## DISCUSSION

¶16    David argues that the circuit court erred in finding the three children in need of protection or services because there was insufficient evidence to support the court's findings that the children were emotionally damaged, neglected, or put at a substantial risk of neglect. David also contends that the circuit court's dispositional order was in error because the court did not select the means "which are the least restrictive of the rights of the parent and child" pursuant to WIS. STAT. § 48.355(1), erroneously abdicated its discretionary authority to the County, and was objectively biased. Finally, David asserts that the court deprived him of procedural due process. Each argument is addressed in turn, beginning with governing principles regarding CHIPS cases and this court's standard of review.

## I.  Governing Principles Regarding CHIPS Cases and This Court's Standard of Review.

¶17    CHIPS proceedings under WIS. STAT. § 48.13 must be initiated by a petition with allegations that are based on "reliable and credible information" and provide "reasonable notice of the conduct or circumstances to be considered by the court." WIS. STAT. § 48.255(1)(e). Once the petition is filed, a fact-finding hearing is required to determine whether those allegations are supported by "clear

and convincing evidence." WIS. STAT. § 48.31(1). The court is the fact-finder at this hearing unless a jury trial is requested. Sec. 48.31(2). If the allegations in the petition are proven by clear and convincing evidence, then the court must determine whether, as a matter of law, the evidence is legally sufficient. *State v. Aimee M.*, 194 Wis. 2d 282, 299, 533 N.W.2d 812 (1995). If so, the court concludes as a matter of law that the child is in need of protection or services. *Id.*; Sec. 48.31(2).

¶18     The court may determine that a child is "in need of protection or services" if "one or more" of the jurisdictional bases set forth under WIS. STAT. § 48.13 are established to the satisfaction of the trier of fact. *Aimee M.*, 194 Wis. 2d at 299; *see also* § 48.13(intro.) ("[T]he court has exclusive original jurisdiction … if one of the following applies."). The court's determination as to whether a child is in need of protection or services that can be ordered by the court "should be made based on facts as they existed at the time the petition was filed." *State v. Gregory L.S.*, 2002 WI App 101, ¶29, 253 Wis. 2d 563, 643 N.W.2d 890.

¶19     Once the court determines that a child is in need of protection or services that can be ordered by the court, the court must enter a dispositional order setting forth the care and treatment plan for the child. WIS. STAT. § 48.345. The court's dispositional order should be "consistent with the factual grounds proven at the trial." *Aimee M.*, 194 Wis. 2d at 299; *see also* WIS. STAT. § 48.355(1) ("In any order under s. 48.345 … the judge shall decide on a placement and treatment finding based on evidence submitted to the judge."). Unlike the fact-finding hearing, the court may consider circumstances subsequent to the petition's filing at the dispositional hearing. *Gregory L.S.*, 253 Wis. 2d 563, ¶4.

9

¶20    In reviewing whether there is sufficient evidence to support the circuit court's finding that the child is in need of protection or services under WIS. STAT. § 48.13, this court will not set aside the circuit court's factual findings unless those findings are clearly erroneous. WIS. STAT. § 805.17(2).  Additionally, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.*; *Noble v. Noble*, 2005 WI App 227, ¶16, 287 Wis. 2d 699, 706 N.W.2d 166 ("The weight and credibility to be given to testimony is uniquely within the province of the trial court.").  When reviewing the circuit court's findings of fact, this court searches the record for evidence to support findings reached by the circuit court, not for evidence to support findings that the circuit court could have reached but did not.  *Noble*, 287 Wis. 2d 699, ¶15. This court reviews the circuit court's application of law de novo.  *S.O. v. T.R.*, 2016 WI App 24, ¶44, 367 Wis. 2d 669, 877 N.W.2d 408.

¶21    Additionally, this court reviews a circuit court's dispositional order for an erroneous exercise of discretion.  *State v. Richard J.D.*, 2006 WI App 242, ¶5, 297 Wis. 2d 20, 724 N.W.2d 665.  "The circuit court properly exercises its discretion when it examines the relevant facts, applies the proper legal standard, and uses a rational process to reach a reasonable conclusion." *Id.*  "If the [circuit] court failed to 'adequately explain its reasoning, [this court] may search the record to determine if it supports the court's discretionary decision.'"  *Dalka v. Wisconsin Cent., Ltd.*, 2012 WI App 22, ¶51, 339 Wis. 2d 361, 811 N.W.2d 834.

**II. The Circuit Court Did Not Err in Finding that the Children Were in Need of Protection or Services for Emotional Damage.**

¶22    WISCONSIN STAT. § 48.13(11) provides that the court may order protection or services for a child if "[t]he child is suffering emotional damage for which the parent, guardian or legal custodian has neglected, refused or been unable and is neglecting, refusing or unable, for reasons other than poverty, to obtain necessary treatment or to take necessary steps to ameliorate the symptoms." Sec. 48.13(11).    This section requires that two separate elements be satisfied: (1) that the child is suffering "emotional damage"; and (2) that the parent is failing, for reasons other than poverty, to obtain necessary treatment or to take necessary steps to ameliorate the child's symptoms. *Id.*; *see also* WIS JI—CHILDREN 260.

¶23    In the present case, the circuit court found that all three children were in need of protection or services for emotional damage under WIS. STAT. § 48.13(11).    Under the first element, the court found that the children met the definition of "emotional damage" based on "the testimony and testing by Dr. Engen."    Under the second element, the court found that the parents failed to obtain the necessary treatment for their children based on, among other things, the lack of cooperation between the parents when scheduling counseling appointments. Each element is addressed in turn.

**A. The Circuit Court Did Not Err in Finding That the Children Suffered Emotional Damage.**

¶24    David argues that the court erroneously relied on Dr. Engen's testimony in finding that the children met the definition of "emotional damage."

The County responds that David forfeited his argument about Dr. Engen's testimony because he failed to object to that testimony in the circuit court proceedings. The County also argues that, even if David did not forfeit, the court properly relied on Dr. Engen's assessments of the children.

¶25 The general rule of forfeiture is that a party seeking reversal of a circuit court decision may not advance an argument that was not presented to the circuit court. *State v. Ndina*, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612 (holding that the failure to timely raise an argument in the circuit court may forfeit the argument on appeal). However, "[i]n actions tried by the court without a jury, the question of the *sufficiency of the evidence* to support the findings may be raised on appeal whether or not the party raising the question has objected in the trial court to such findings or moved for [a] new trial." WIS. STAT. § 805.17(4) (emphasis added).

¶26 In the present case, David's argument regarding Dr. Engen's testimony attacks the circuit court's determination that Dr. Engen's testimony is sufficient to sustain a finding that the children suffered "emotional damage" pursuant to WIS. STAT. § 48.13(11). David does not argue that Dr. Engen's testimony is inadmissible, only that this testimony carries little weight in determining whether the children suffered emotional damage because Dr. Engen's examinations occurred after the CHIPS petitions were filed. Accordingly, David did not forfeit his challenge to Dr. Engen's testimony. *See* WIS. STAT. § 805.17(4).

¶27     As to the merits of David's argument, the circuit court did not err in finding that the children were emotionally damaged under WIS. STAT. § 48.13(11). The term "emotional damage" is defined under WIS. STAT. ch. 48 as:

> harm to a child's psychological or intellectual functioning. 'Emotional damage' shall be evidenced by one or more of the following characteristics exhibited to a severe degree: anxiety; depression; withdrawal; outward aggressive behavior; or a substantial and observable change in behavior, emotional response or cognition that is not within the normal range for the child's age and stage of development.

WIS. STAT. § 48.02(5j).  In its oral ruling, the court found that these three children "have exhibited to a severe degree anxiety, depression, withdrawal, or other substantial and observable changes in behavior, emotional response, or cognition that is not within the normal range for the children's age and stage of development."

¶28     The circuit court stated that its finding of emotional damage was based on Dr. Engen's testimony and set forth the portions of that testimony that supported its finding.  The court reiterated Dr. Engen's diagnoses that Nancy had "evidence of abnormal psychological functioning to a clinically significant level," that Donald met all five criteria for PTSD and expressed the highest levels of uncertainty and fear among the three children, and that Natalie met four of the five criteria for PTSD.  The court also restated Dr. Engen's conclusions that Biblical stories and beliefs had been "weaponized" to harm the children and that the children had lost trust in their parents and counselors.  The court found Dr. Engen's testimony to be "highly credible" and stated that it would rely on that testimony.

13

¶29     David argues that the circuit court erroneously relied on Dr. Engen's testimony because Dr. Engen's assessments of the children took place in March 2021—nearly two months after the CHIPS petitions were filed on January 8, 2021—and did not address the children's emotional state at the time those petitions were filed. *See* **Gregory L.S.**, 253 Wis. 2d 563, ¶29 ("[T]he court's determination … relating to whether the child is in need of protection or services … should be made based on facts as they existed at the time the petition was filed."). David asserts that Dr. Engen's conclusions are skewed by the adverse effects of the County's intervention and removal of the children from David's home that occurred after the filing of the CHIPS petitions.

¶30     Contrary to David's argument, however, Dr. Engen's assessments and testimony were not based exclusively on the children's post-petition emotional state. For example, Dr. Engen explained that she had reviewed documents and statements relating to the children's behaviors throughout 2020 as well as audio and video recordings of the children from November and December of 2020. Further, during her examinations, Dr. Engen discussed events with the children that had occurred prior to the filing of the CHIPS petitions. Finally, Dr. Engen considered David's answers to a questionnaire that addressed his observations of the children's symptoms before the County filed the CHIPS petitions. Because Dr. Engen's testimony encompassed the children's emotional state prior to the filing of the petitions, the court did not err in relying on Dr. Engen's testimony in finding emotional damage.

¶31     This conclusion is reinforced by the statutory procedure under WIS. STAT. § 48.31(4). As mentioned earlier, this statute requires that the court appoint "a licensed physician specializing in psychiatry or a licensed psychologist" to

examine the child before the court may find that the child is suffering emotional damage. Sec. 48.31(4). According to this procedure, a psychologist's examinations will necessarily occur after a CHIPS petition is filed with the court. Thus, David's suggestion that Dr. Engen's assessments should be given less weight because those assessments occurred after the petitions were filed is contrary to the statutorily required procedure.

¶32 Further, the circuit court relied on evidence other than Dr. Engen's testimony in finding emotional damage, including the testimony of the parents and a social worker as well as the documents and recordings entered into evidence. Much of this evidence related to events and circumstances that occurred prior to the filing of the CHIPS petitions and, according to the court, often reinforced Dr. Engen's conclusions from her examination of the children. The court found the social worker to be a "highly credible witness." Although the court did not expressly state that it was basing its finding of emotional damage on this evidence, it is clear from the record that this evidence also supports the court's finding that the children suffered emotional damage at the time of the filing of the CHIPS petitions. *See Noble*, 287 Wis. 2d 699, ¶15 ("When reviewing fact finding, appellate courts search the record for evidence to support findings reached by the trial court, not for evidence to support findings the trial court could have reached but did not."). Accordingly, the circuit court did not err in finding that the children suffered emotional damage.

## B.  The Circuit Court Did Not Err in Finding That the Parents Failed to Obtain Necessary Treatment.

¶33     The second element of WIS. STAT. § 48.13(11) requires the circuit court to find that "the parent … has neglected, refused or been unable and is neglecting, refusing or unable, for reasons other than poverty, to obtain necessary treatment or to take necessary steps to ameliorate the symptoms."  Sec. 48.13(11). In its oral ruling, the court found that the parents had been unsuccessful in treating the children's emotional damage because the parents were unable to establish a successful relationship for the children with a neutral counselor.  The court explained that, while both parents saw the need for counseling for the children, the "extreme lack of trust" between the parents "literally prohibited them from making arrangements that actually worked and that were actually successful."  The court acknowledged that David had taken the children to counseling at times in 2020, but explained that having one parent take the children to counseling without involving the other parent "would defeat the idea of neutrality as well as the benefits of counseling."

¶34     Although the circuit court did not state in its ruling that it found the second element of WIS. STAT. § 48.13(11) to be satisfied, the court's ruling explicitly stated this element, explained that the parents had not developed a successful relationship with a counselor to treat the children's emotional damage, and ultimately concluded that the children were in need of protection or services for emotional abuse under § 48.13(11).  There can be no question from the record that the circuit court, in effect, made the necessary finding and the court's finding is not clearly erroneous.

16

¶35    David argues that there is not clear and convincing evidence that the parents failed to obtain necessary treatment or to take necessary steps to ameliorate the symptoms.  First, he emphasizes that he had taken the children to three different counselors prior to the filing of the CHIPS petitions and had an appointment with a fourth counselor pending at the time the petitions were filed.  However, these facts do not undermine the court's finding that the parents ultimately failed to make successful counseling arrangements.  The children met with the first counselor one time and met with the second counselor for at most one month.  After that, the children did not meet with the third counselor for several months.  After David terminated appointments with the third counselor in October 2020, the children had not met with another counselor by the time the petitions were filed.  This evidence supports the court's finding that the children had not formed a successful relationship with a counselor.  Additionally, David does not dispute the court's finding that a child does not gain as much benefit from counseling when only one parent takes the child to counseling, as David had done for each of these three counselors.

¶36    Second, David asserts that the County harbored "antipathy" towards the children's third counselor and discouraged David from taking the children to that counselor.  However, the parts of the record cited by David for this argument indicate that David's family court attorney, not the County, advised him to find a licensed counselor.  Also, David was unable to recall if this advice was even the reason why he stopped taking the children to that counselor.  Thus, the record does not support David's suggestion that the termination of counseling was caused by the County.

17

¶37   Finally, David states that both he and Rachel were willing to take the children to counseling and had been making efforts to schedule counseling, but that he could not afford the faith-based counseling that he preferred for the children. This argument does not negate the court's determination that the parents were unsuccessful in ameliorating the children's symptoms. Even though the parents "saw the need to take the children to counselors," the parents ultimately failed—for many reasons—to create a successful relationship for the children with a neutral counselor. *See* WIS JI—CHILDREN 260, n.3 (interpreting WIS. STAT. § 48.13(11) as requiring a parental "failure" to provide care).

¶38   In sum, the circuit court's finding that the children were in need of protection or services for "emotional damage" under WIS. STAT. § 48.13(11) is not clearly erroneous. Moreover, because the court's jurisdiction under § 48.13 requires only that one subsection of § 48.13 apply, the remaining jurisdictional bases found by the court—*i.e.*, neglect under § 48.13(10) and substantial risk of neglect under § 48.13(10m)—need not be addressed. *See **Barrows v. American Fam. Ins. Co.**,* 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

### III.  The Circuit Court's Placement and Visitation Orders Were Proper Exercises of Discretion and the Court Did Not Display Bias.

¶39   David argues that the circuit court erroneously exercised its discretion in placing the children with Rachel and ordering that his visitation be in the County's discretion, and that the court displayed bias in favor of the County. Each argument is addressed in turn.

### A. The Circuit Court Properly Exercised its Discretion in Placing the Children With Rachel.

¶40    David argues that the circuit court erroneously exercised its discretion in placing the children with Rachel because there is no evidence that this placement is in the children's best interest or that it is the "least restrictive" means necessary to assure the care, treatment, or rehabilitation of the children.[6] He emphasizes that there was no evidence that he posed a danger to the children's safety or well-being and pointed out that he was interested in taking the children to counseling.  David also disputes the court's finding that he was uncooperative with the County.

¶41    To repeat, "[t]he circuit court properly exercises its discretion when it examines the relevant facts, applies the proper legal standard, and uses a rational process to reach a reasonable conclusion." *Richard J.D.*, 297 Wis. 2d 20, ¶5.

¶42    Here, the circuit court examined the relevant facts, finding that David's lack of cooperation with the County reflected a lack of "insight" and "personal accountability" for the damage caused to the children.  For example, the court noted that David referred to County staff as "F'ing Nazi[s]" and disregarded visitation rules imposed by the County.  Examining the record for additional facts

---

[6] The County argues that David forfeited this argument because he did not object to the placement of the children at the dispositional hearing.  However, as explained earlier, "[i]n actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may be raised on appeal whether or not the party raising the question has objected in the trial court to such findings or moved for [a] new trial." WIS. STAT. § 805.17(4).  Here, David challenges the court's finding that there is sufficient evidence that placement with Rachel is in the children's best interest and is the least restrictive means.  Accordingly, David has not forfeited this argument.

to support the court's finding, *see Dalka*, 339 Wis. 2d 361, ¶51, it is also apparent that that David was not willing to meet with social workers in person, had not consistently responded to calls or emails, had stopped taking the children to counseling, and continued to discuss court matters with the children. By contrast, Rachel had been cooperative with the County and was following the County's recommendations for the children's treatment. These facts belie David's suggestion that he was cooperating with the County.

¶43 Next, the circuit court applied the proper legal standard. When a court enters a dispositional order, the court must employ means to "maintain and protect the well-being of the child" which are the "least restrictive of the rights of the parent and child … and which assure the care, treatment or rehabilitation of the child and the family." WIS. STAT. § 48.355(1). The legislature and our supreme court have emphasized that "the best interests of the child" is the "paramount consideration" or the "polestar of all determinations" under WIS. STAT. ch. 48. WIS. STAT. § 48.01(1) ("In construing this chapter, the best interests of the child or unborn child shall always be of paramount consideration."); *David S. v. Laura S.*, 179 Wis. 2d 114, 149, 507 N.W.2d 94 (1993). Here, the circuit court established on the record that it was aware of the provisions of § 48.355, including the requirements that the court employ means that are "necessary to maintain and protect the well-being of the child," are "the least restrictive of the rights of the parent and child," and "assure the care, treatment or rehabilitation of the child and the family." Sec. 48.355(1).

¶44 Finally, the court's disposition order demonstrates that the circuit court used "a rational process to reach a reasonable conclusion." *See Richard J.D.*, 297 Wis. 2d 20, ¶5. As the court explained at the dispositional hearing, the

County was primarily concerned with the safety and well-being of the children and had recommended care and treatment options for the children. Because David was significantly less cooperative with the County than Rachel, it follows that placement with Rachel was in the best interest of the children because the children would be in a better position to benefit from the County's services and treatment recommendations. It also follows from David's lack of cooperation that lesser restrictive measures—such as partial placement with David—would not necessarily assure the "care, treatment or rehabilitation of the child and the family." Sec. 48.355(1). Accordingly, the court's placement order is a proper exercise of discretion because the court reached a reasonable and rational conclusion based on the facts and the appropriate legal standard.

### B. The Court Properly Exercised its Discretion in Ordering That Visitation Be in the County's Discretion.

¶45 David also contends that the circuit court erred in "abdicat[ing] its discretionary authority" to the County to determine David's visitation. David asserts that the court did not require that the County allow David to visit the children and did not set "any reasonable rules of parental visitation" as required by WIS. STAT. § 48.355(3)(a). David further argues that the court provided no standards for David to increase his visitation with the children or to see his children without supervision and, as a result, did not employ the "least restrictive" means as required by § 48.355(1).

¶46 Here, the court's visitation order was a proper exercise of discretion for at least the following reasons. The court based its visitation order on the same relevant facts as the placement order—*i.e.*, David's lack of cooperation with the

County—and properly applied the same legal standard under WIS. STAT. § 48.355(1) regarding the children's best interest, the least restrictive means, and preserving the family unit. David argues that the court failed to follow the legal standard under § 48.355(3)(a). This provision states: "if, after a hearing on the issue with due notice to the parent or guardian, the court finds that it would be in the best interest of the child, the court may set reasonable rules of parental visitation." Sec. 48.355(3)(a). The plain language of this section merely grants permissive authority to the court to set rules of parental visitation. This section does not require the court to set rules of parental visitation or order visitation for both parents, nor does it prohibit the court from ordering the County to determine the rules of visitation. David does not provide a cogent argument to the contrary.

¶47 Additionally, the circuit court's visitation order demonstrates that the court used "a rational process to reach a reasonable conclusion." *See **Richard J.D.***, 297 Wis. 2d 20, ¶5. In ordering that visitation occur at the County's discretion, the court reiterated that David had not been cooperating with the County. The court explained that it could not supervise the visits and trusted that the County would do its job. The court continued that supervision would likely taper off gradually until there was no more need for supervision, but that David could file a motion with the court if he believed visitation was not progressing quickly enough. Based on the fact that the County has more immediate tools and resources to manage visitation than the circuit court, the court's order that visitation be in the County's discretion is rational and reasonable.

¶48 Further, the circuit court's visitation order is the least restrictive means to assure "the care, treatment or rehabilitation of the child and the family." *See* WIS. STAT. § 48.355(1). The court could not be sure that the children's best

interest would be served through less restrictive means—such as partial placement with David—because David had not demonstrated that he was willing to cooperate with the County. As the court explained, however, the terms of visitation could ease if David continued making progress in cooperating with the County and provided for the children's mental health according to the conditions of supervision. This is a rational decision based on relevant facts and legal standards, and does not restrict David's parental rights more than necessary in light of the children's best interest. Accordingly, the circuit court's visitation order is a proper exercise of discretion.

### C. The Court Did Not Display Bias in Favor of the County.

¶49 David asserts that the circuit court displayed objective bias when issuing its order. "A fair trial in a fair tribunal is a basic requirement of due process." *Miller v. Carroll*, 2020 WI 56, ¶21, 392 Wis. 2d 49, 944 N.W.2d 542, *cert. denied sub nom. Carroll v. Miller*, 141 S. Ct. 557 (2020). This court presumes that "a judge has acted fairly, impartially, and without bias." *Id.* "To overcome that presumption, the burden is on the party asserting judicial bias to show bias by a preponderance of the evidence." *Id.* In assessing whether "the probability of actual bias rises to the level of a due process violation," this court asks whether there is "a serious risk of actual bias—based on objective and reasonable perceptions." *Id.*, ¶24 (quoted source omitted). "[I]t is the exceptional case with 'extreme facts' which rises to the level of a 'serious risk of actual bias.'" *Id.* (quoted source omitted).

¶50 In the present case, David references the following comments by the circuit court regarding the County's conduct during the investigation:

> I don't buy the argument that the [County] caused this problem. Not for a second. I've got to tell you, I -- I work with these guys every Tuesday all day long. They have plenty of work. They do not need to create any more work.
>
> ….
>
> … [w]e want to be done. We want to solve this problem. We want to be out of your life. We don't want to be a part of your lives. We just want to fix the problems and have you move on with happy, healthy children.

David argues that the these comments "could objectively be viewed by a reasonable person as indicating that the court considering itself *part* of Portage County rather than a third-party arbiter in this case." David analogizes these comments to *State v. Rochelt*, 165 Wis. 2d 373, 477 N.W.2d 659 (Ct. App. 1991), in which this court held that a judge's use of the term "us" with respect to police witnesses created "an appearance that the judge considered himself part of the prosecution." *Rochelt*, 165 Wis. 2d at 380.

¶51    David has not overcome the presumption that the court "acted fairly, impartially, and without bias." *See Miller v. Carroll*, 392 Wis. 2d 49, ¶21. A reasonable reading of the circuit court's comments in the context of the court's entire ruling indicates that the court was merely explaining that it shares a common goal with the County of solving problems and helping children. As the court explained earlier in its ruling, "we [(juvenile courts)] are problem-solving courts as opposed to criminal court where you just simply follow the blackletter law every time possible. Here we try to help and fix things." That the court and the County may have similar objectives with regard to the children's well-being does not create a "a serious risk of actual bias." *See id.*, ¶24. Further, this court's decision in *Rochelt* does not compel a different conclusion. Whereas the judge's statement in *Rochelt* created an appearance that the judge considered himself part

24

of the prosecution, **Rochelt**, 165 Wis. 2d at 380, the circuit court's use of the word "we" in the present case does not indicate that the court considered itself "part" of the County. Rather, as explained above, the court was merely expressing that it had the same general objectives as the County in these circumstances. Therefore, David has failed to demonstrate that the court displayed objective bias.

### IV. The Circuit Court Did Not Deprive David of Due Process.

¶52    Finally, David argues that the court deprived him of his right to procedural due process when it limited his ability to present evidence to impeach the County's witnesses. "[P]rocedural due process rights emanate from the Fourteenth Amendment" and protect "individuals from governmental 'denial of fundamental procedural fairness.'" **Thorp v. Town of Lebanon**, 2000 WI 60, ¶53, 235 Wis. 2d 610, 612 N.W.2d 59. "[A] plaintiff must show a deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' without due process of law." **Id.** (quoted source omitted). Here, the parties do not dispute that David has a fundamental liberty interest in the "care, custody, and management" of his children. *See* **State v. Patricia A.P.**, 195 Wis. 2d 855, 862, 537 N.W.2d 47 (Ct. App. 1995) (quoted source omitted). Whether the right to due process was violated presents a question of law that this court reviews de novo. **State v. McGuire**, 2010 WI 91, ¶26, 328 Wis. 2d 289, 786 N.W.2d 227.

¶53    David argues that the circuit court denied his right to due process and a fair trial when it considered evidence of fault and the cause of the children's emotional damage because the court had previously limited the scope of the hearing to prevent litigation of such fault. David points to parts of the proceedings

25

where the court limited his questioning of witnesses,[7] declined to admit an interview of Nancy into evidence, and criticized David for disputing his military discharge despite the court stating that it would not put much weight on that discharge. David then references a portion of the oral disposition ruling in which the circuit court stated, "I don't buy the argument that the [County] caused this problem." David concludes that "[t]he court's decision might have been different if it had allowed the parties to present evidence of fault."[8]

¶54    For at least the following reasons, David has not shown that the circuit court's limitations on his presentation of evidence denied his right to due process. First, David does not explain how the court's limits on his questioning or the court's failure to admit Nancy's interview are connected to the litigation of fault or the cause of the children's emotional damage. This court may decline to address undeveloped arguments. *See **State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (holding that this court "cannot serve as both advocate and judge").

¶55    Second, David's right to due process was not denied when the circuit court stated that it did not believe the County caused the children's emotional

---

[7] Specifically, David asserts that the circuit court limited his questioning regarding the timing of the County's investigation and the action affecting the family, Rachel's dependency on David, the children's purportedly false statements during the investigation, the manipulation of videos relied on by the County, and certain inaccuracies in the County's reports.

[8] The County argues that David forfeited this argument by not objecting to the motion which requested the limiting of evidence of fault. David's argument in his brief-in-chief is quite hard to distill, but the reply brief clarifies that the court improperly made findings of fault even though it limited evidence of fault. In other words, David does not dispute the limiting of evidence of fault, only that the court's subsequent findings of fault deprived him of a fair trial. Accordingly, David did not forfeit this argument.

damage despite the fact that it generally limited the admission of evidence regarding fault. In the context of the court's ruling, this statement was not a decision that the County was faultless but was, rather, a statement that David's continued assertions that the County caused the children's emotional damage reflected his lack of insight and accountability for that damage. Similarly, the court stated that David's dispute about his military discharge reflected his failure to accept responsibility. The context of these statements belie David's assertion that the court decided fault and deprived him of a fair trial.

¶56    David also contends that the court denied his right to due process when it limited his ability to cross-examine the County's witnesses for "possible religion-based bias" and "inaccuracies in reports." David argues that the County's presentation of evidence had repeatedly painted David's religion in a negative light, but the court terminated David's line of questioning in which he attempted to prove that his religion was not material to the proceedings. David also states that, when he questioned a social worker regarding the County's focus on religion in the CHIPS petitions, the court characterized that questioning as "little stuff."

¶57    Contrary to David's argument, however, the circuit court did not limit David's questioning of the County's witnesses for religious bias. Not only does the terminated line of questioning to which David refers contain no questions about religious bias, but David also admits in his brief-in-chief that the court permitted him to question a social worker about the County's focus on David's religion in the petitions. Although the court at one point characterized David's questioning about religious bias as "little stuff," the court immediately retracted that statement and stated: "'Little stuff' is not a good characterization. But I think -- ask your questions. I'm going to allow it. But let's keep moving." Thus, David

has not shown that the court prohibited him from asking questions about religious bias.

¶58 In sum, David has not demonstrated that the circuit court denied his right to procedural due process.

## CONCLUSION

¶59 For the foregoing reasons, the orders of the circuit court are affirmed.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.